JACK DEMAR ET AL. *v.* CROSCO BUILDING COMPANY, INC.

[No. 59, October Term, 1940.]

*Decided December 18th, 1940.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*J. Paul Schmidt,* with whom were *Murray MacNabb* and *J. Carroll Power,* on the brief, for the appellants.

*Edward L. Ward,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal by Jack DeMar and Tilden F. Hare from a decree of the Circuit Court No. 2 of Baltimore City, dated June 14th, 1940, directing appellants to specifically perform a contract dated April 20th, 1939, between Jack DeMar as vendor and appellee as vendee for the sale and purchase of a forty-two acre tract of land located in Baltimore City and in Anne Arundel County.

The bill of complaint was filed October 10th, 1939, and the contract whose enforcement was specifically sought was dated April 20th, 1939. Under its provisions the land referred to was sold by DeMar to appellee for $6000, $250 of which had been paid to one Steinberg, attorney and agent for DeMar, which sum Steinberg was to hold in escrow pending examination of title, and $5750 was to be paid at the time of settlement, which was to take place within ninety days from date of contract. It was further agreed that the property was to be conveyed to appellee subject to a mortgage thereon which the vendor warranted not to be in excess of $15,500. Appellee, as vendee, agreed to be bound by the terms referred to, and also agreed to pay arrearages in taxes, water rent, paying city and county benefit assessments, if any, and in-

terest charges on the $15,500 up to the amount of $800, but all mortgage interest in excess of the $800 was to be paid by DeMar at the time of settlement, likewise all rentals collected by DeMar for the year 1939 were to be adjusted to date of settlement. The agreement contained a warranty that the vendor was receiving an annual income for the year 1939 of $1772.50 from rentals of shore cottages mentioned on a schedule attached thereto. If the vendee found that rentals did not amount to the figure named, which difference was not occasioned by nonpayment, an allowance was to be made in the reduction of the purchase price based upon a six per cent. capitalization "of the difference in rental from the amount hereinbefore stated and that actually due and payable." It was further provided that if the existing mortgage should be in default in payments of principal or interest prior to settlement date, the vendee should be entitled on behalf of the vendor to make payment of the same in order to prevent foreclosure proceedings, and all such payments, should the sale be consummated, were to be regarded as payments by the vendee on account of the mortgage. Upon payment of the full purchase price of $6000, a deed for the property was to be executed by the vendor át the vendee's expense, conveying the land by "a good and merchantable title to the vendee free and clear of any leases or ownership claims in the shore bungalows or any other outstanding interest" other than the $15,500 mortgage.

The contract which has been referred to was filed as an exhibit and made a part of the bill of complaint for specific performance, in which, after making reference to the terms of the contract, it was further alleged that the complainant had caused title to the property to be examined by the Maryland Title and Guaranty Company, whose report indicated the title was good and marketable, subject to the $15,500 mortgage and subject to the rights, if any, of tenants in possession of the property, and to certain formal right-of-way grants, and also subject to the completion of the administration of the estate

of Katherine DeMar, deceased, in the Orphans' Court of Anne Arundel County, Mrs. DeMar having been the wife of Jack DeMar, who became the owner of the property by virtue of a devise made to him in her last will and testament. It was further alleged in the bill of complaint that appellee had done and performed everything on its part to be done under the provisions of the contract, and was ready, willing and able to carry out all its terms and provisions and to pay unto the vendor the balance of the purchase price, subject to the conditions set forth in the contract of sale, but the vendor had refused and neglected to perform the contract, despite the fact that due demand had been made upon him.

To that bill of complaint, DeMar filed a demurrer which was overruled by the chancellor, whose action in that regard has not been questioned either in the written briefs or oral arguments before this court, and it therefore seems wholly unnecessary to discuss it, except to add that the grounds of the bill of complaint present a case for equitable relief and the chancellor's action in overruling the demurrer was correct.

DeMar answered the bill of complaint, and, with regard to the paragraph alleging his execution of the contract of sale, he asserted that, since he could neither read nor write, he neither denied or admitted its allegations, but that he never had received the $250 deposit thereon. On the same date that the answer was filed Tilden F. Hare filed a petition in the case, referred to the contract whose specific enforcement was sought, and alleged that, such contract not being of record, the petitioner had, without knowledge thereof, more than five months subsequent to the date of the agreement made a contract to purchase the property for $5000, on account of which he had paid $2000 and other large sums for arrearages in taxes. He asked leave to intervene in the proceedings for the purpose of protecting his rights. Such leave was granted, whereupon Hare filed an answer to the bill of complaint, in which he, for the most part, contented himself with neither admitting nor denying its allegations,

except as to the existence of a $15,500 mortgage upon the property, and alleged further that he had purchased the property, and in addition to taxes and other expenses had advanced DeMar $2000 as a part of the purchase price. With his answer he filed his contract of purchase as an exhibit.

Later DeMar filed an amended answer, in which he admitted having signed the contract of April 20th, 1939, and further admitted that the property was, at the time the contract was signed, subject to a $15,500 mortgage and he identified the contract filed with the bill of complaint as the one which he signed. He further stated that the Maryland Title Guaranty Company had examined the title and found it good and merchantable, subject to the mortgage referred to, and alleged that there were certain tenants occupying portions of the property, but that administration of his wife's estate had been completed in the Orphans' Court of Anne Arundel County. He denied that the complainant had done all acts on its part required to be done under the contract, and that it had ever been ready, willing and able to carry out its terms and provisions, and on the contrary asserted that under its terms the transfer was to have been completed within ninety days from April 20th, 1939. He denied that the complainant had ever tendered to him the cash balance, but asserted that it had attempted to require him to accept a mortgage in payment of the cash it was required to pay under the contract. He further alleged in his answer that the complainant had delayed the fulfillment of the contract, and in the latter part of August or first of September, 1939, had abandoned it, whereupon he was required to make sale of the property in order to save and protect his interest therein. He admitted the sale to Hare, but contended that prior thereto the plaintiff had lost and abandoned its rights under the contract.

The cause subsequently proceeded to a hearing, testimony having been taken in open court before the chancellor, at the conclusion of which he stated he would specifically enforce the contract of sale dated April 20th, 1939,

between Jack DeMar and appellee. Later he signed a decree for specific performance and stayed the decree so signed after appellant had given bond to cover the costs of appeal, and had insured the property which was the subject of the litigation.

By deed of May 31st, 1930, DeMar conveyed the property mentioned in the contract of April 20th, 1939, to Tilden F. Hare, and the deed was recorded among the Land Records of Baltimore City. That deed antedated the court's decree of specific performance, but the parties, by stipulation contained in the record prior to the decree, agreed that Hare had the property conveyed to him in order to protect the advancement and payments which he had made to DeMar.

The record also contains an admission by counsel for DeMar that, although the notice to creditors upon the estate of his deceased wife had expired before the contract was made, two claims had been filed against the estate and had not been paid, nor had the real estate been appraised, and the inheritance taxes thereon had not been paid.

It should also be stated that the $15,500 mortgage upon the property had been pledged by the mortgage to Geraldine Dugan to secure a loan of $9000 and that the mortgagee, Charlotte H. Tayman, assigned her interest in the mortgage to an attorney for foreclosure, and proceedings were instituted in Baltimore City and a certified copy of them had been filed in Anne Arundel County. While the cause was subsequently dismissed in Baltimore City, the costs were not paid, and the proceedings in Anne Arundel County had not been dismissed, nor had the costs been paid.

The record containing the testimony taken before the chancellor is voluminous, and for this reason the court will state its conclusions of fact rather than give the testimony in detail.

We are convinced that DeMar, who may be characterized as illiterate, is not a stupid man; that he freely executed the contract of April 20th, 1939, as to which he

had the advice of competent counsel, and must have understood its terms and conditions. We further find that he realized he was contracting to sell a good and marketable title, for, shortly after he executed the contract, his representative, who acted as broker in the transaction, together with counsel for appellee, made application to the Maryland Title Guaranty Company to search and guarantee the title. The report of the latter disclosed the existence of the $15,500 mortgage and certain difficulties relating to its attempted foreclosure, in which the costs had not been paid, nor the causes dismissed. It showed the more important objection that Mrs. DeMar's estate had not been completely administered upon in Anne Arundel County, for the property had not been inventoried and the inheritance tax due thereon had neither been determined nor paid. The broker and the vendor had on three occasions interviewed the head of the legal department of the Title Company relative to those matters, but no arrangement was ever reached whereby DeMar could advance a sum of money to cover inheritance taxes upon his wife's property, and no arrangements had been made to complete the administration of her estate, and no statement was obtained from the vendor concerning the rentals collectible upon the property until September, 1939, although efforts had previously been made to secure from DeMar such a statement. Finally a date was fixed for settlement, after the statement for rentals had been secured, in the belief that DeMar would allow them to hold out sufficient of the money to take care of other matters, but DeMar did not appear for the settlement and made the statement that he was not going to consummate it. Meanwhile representatives of appellee told the broker they were ready to make settlement as soon as DeMar would meet them and make necessary adjustments. After he failed to appear at the first settlement date, they attempted to fix another date and communicated to DeMar their willingness to make settlement, but he took the attitude that he was to have $6000 in cash, and if he did not get that amount he would

not make settlement. So far as is determinable from the record, appellee was always in position to complete its contract in accordance with its terms, but DeMar failed and refused to cooperate.

In regard to the $250, it may be said that this in the first instance was represented by a check of Morris Klein payable to DeMar's broker. Later, while settlement was pending, the maker of that check died, but, in lieu thereof, his brother, David Klein, as agent for appellee, gave Steinberg $250 in cash to take care of the check.

DeMar's contention that instead of paying him cash they undertook to compel him to take a second mortgage upon the property was a proposition which did not come from appellee and there is no proof on the record that appellee had knowledge of it. As has already been noted, the holder of the equity of the mortgage wanted it paid off, and the amount due her thereon, plus the amount they were to pay for the property in addition to the entire mortgage of $15,500, plus taxes, interest and water rent, raised the figure required in cash to approximately $13,000. When his broker learned of this, he suggested to DeMar that it was quite a sizable sum for the purchaser to pay immediately, and suggested that they pay off the equity in the mortgage, other items they had agreed to pay, and $2000 on account of the purchase price to DeMar, who was to take a second mortgage for the balance. There is evidence that he at first consented to this arrangement, but later repudiated it, but be that as it may, we are convinced that appellee was at all times in position to make settlement, not only of the $6000 item and liens it had agreed to pay in cash, but as well of the mortgage equity in case it were demanded and required to be paid. The testimony does not support the contention that appellee had abandoned the contract, and since we find it was at all times able, ready and willing to perform, and failure to perform was occasioned by the refusal of DeMar to consummate the sale, appellee can on no theory be chargeable with laches. The contract for the sale of the property is in writing, and its nature

and circumstances being unobjectionable, it follows as a matter of course that a decree for specific performance should have been granted. *Budacz v. Fradkin,* 146 Md. 400, 126 A. 220; *Liggett Co. v. Rose,* 152 Md. 146, 136 A. 651.

Two other objections are urged by DeMar as defeating specific performance. The first is that time was of the essence of the contract and the failure of the appellee to perform within ninety days from April 20th, 1939, placed it in default, hence specific performance should not have been granted, and the contract should have been rescinded as requested by DeMar in his answer. The second ground urged against specific performance is that the contract lacked mutuality of remedy and of obligation. In support of this ground he states that, because appellee is not shown to be possessed of property or money, he could not have specifically enforced the contract against it, hence it should not have specific performance thereof against him.

Concerning the first of those contentions, it is sufficient to observe that nothing is contained in the contract to justify the contention that time is of the essence. Were this the intention of the parties, it would have been a simple matter for DeMar's counsel to have made his undertaking conditional on the performance of the payment of the money within ninety days (*Jaeger v. Shea,* 130 Md. 1, 99 A. 954), but here the contract contains nothing from which it may be inferred that timely performance is in effect a condition. And the testimony shows that, long after the expiration of the ninety day period, both DeMar and his counsel regarded the contract with appellee as being in force and effect.

But apart from that, and assuming that time were of the essence in regard to the ninety day settlement provision, it is to be borne in mind that, at the expiration of ninety days, DeMar could not convey to appellee the character of title it had purchased.

And it cannot be successfully contended that appellee was bound to accept under the contract a title short of

an unencumbered estate in fee, except as to the mortgage of $15,500. *Budacz v. Fradkin, supra; Diamond v. Shriver,* 114 Md. 643, 80 A. 217.

As to the second contention, viz, a lack of mutuality, both of remedy and obligation, we regard the contract under consideration as not lacking in either of those elements. It is undisputed that appellee, upon the purchaser's ability to convey to it title to the property of the character he had agreed to convey, owed him (De-Mar) the amount it had contracted to pay therefor, and its refusal to pay the same would have entitled the seller to proceed against the Crosco Building Company, Inc., for the purpose of specific enforcement of the contract. This being true, it cannot be said that the obligations are lacking either in remedy or mutuality. DeMar's contention in this respect seems to arise from the fact that appellee owns no property, and although he could have secured a decree against it for specific performance of the contract, yet because of its impecuniousness he would have failed to receive the money decreed to be paid. That contention goes beyond the authorities which he cites in support of a lack of mutuality of remedy and obligation. In final analysis, notwithstanding DeMar elected to deal with appellee, he now seeks to be relieved from performance, because of the contention that appellee's financial status is not good, but that status has not changed since the contract was made. He accepted appellee as a contractee, and, in our opinion, the latter being now in position to pay him in accordance with the contract, he is not excused from performance by reason of the matters relied upon.

The other objections urged against specific performance, viz., laches, abandonment, inability of appellee to perform, the ability of DeMar to perform, unfairness and harshness of the contract, its failure to come into court with clean hands, have all been answered by us adversely to contentions of appellants by findings of fact in the case, and therefore require no further consideration.

It becomes unnecessary to prolong this opinion by considering in detail appellants' exceptions to the admissibility of some of the testimony in the case, since a careful consideration thereof, even if we agreed that it was not admissible, would not affect the conclusion we have reached.

*Decree affirmed, with costs.*