CHARLOTTE H. TAYMAN *v.* TILDEN F. HARE

[No. 6, October Term, 1943.]

*Decided November 3, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, ADAMS, and BAILEY, JJ.

*John S. Strahorn* and *Murray MacNabb* for the appellant.

*William J. McWilliams,* with whom was *A. Bowie Duckett, Jr.,* on the brief, for the appellee.

BAILEY, J., delivered the opinion of the Court.

Charlotte H. Tayman agreed to sell to Tilden F. Hare a mortgage in the principal amount of $15,500 which she held on property known as "Hillwood Shores," for the sum of $14,500. The agreement dated April 26, 1939, was in writing and provided that Mrs. Tayman "hereby agrees to indemnify the said party of the second part (Hare) from any loss arising from taxes due as of this date over and above the sum of $800.00 the party of the second part (Hare) agrees to absorb said taxes if need be under said sum of $800.00." Hare paid Mrs. Tayman $200 at the time of the execution of the agreement. Mrs. Tayman had previously borrowed from one Geraldine Dugan $9,000 on the security of this mortgage and when settlement was made by Hare on June 15, 1939, within the sixty days provided in the agreement, he paid the further sum of $4,989.91, after making adjustment of interest and certain rents collected by Mrs. Dugan and after allowance for the $9,000 thereof due to Mrs. Dugan.

On September 22, 1939, Hare entered into a written contract for the purchase of "Hillwood Shores" from Jack DeMar, the owner thereof, for the sum of $5,000, subject to the said mortgage for $15,500. On September 29, 1939, and October 9, 1939, he paid taxes levied against the said property for the years 1937, 1938 and 1939 and then overdue, in the total amount of $1,512.91. At the time of the execution of the last mentioned contract he paid to DeMar the sum of $500, and on October 10, 1939, he made another payment of $1,000.

DeMar had previously thereto, on April 20, 1939, entered into a written contract with Crosco Building Company, Inc., for the sale of the identical property for $6,000, subject to the mortgage thereon in the amount of $15,500. On October 10, 1939, Crosco Building Company, Inc., filed its bill of complaint against DeMar in Circuit Court No. 2 of Baltimore City for the specific performance of this contract. From the decree of said

court directing that the said contract be specifically performed, an appeal was taken, and by the opinion of this court, reported as *DeMar v. Crosco Building Company, Inc.*, 179 Md. 161, 16 A. 2d 884, the decree was affirmed on December 18, 1940.

We quote as follows from the opinion in said case at page 164 of 179 Md. at page 885 of 16 A. 2d: "On the same date that the answer was filed Tilden F. Hare filed a petition in the case, referred to the contract whose specific enforcement was sought, and alleged that such contract not being of record, the petitioner had without knowledge thereof more than five months subsequent to the date of the agreement made a contract to purchase the property for $5,000, on account of which he had paid $2,000 and other large sums for arrearages in taxes. He asked leave to intervene in the proceedings for the purpose of protecting his rights. Such leave was granted, whereupon Hare filed an answer to the bill of complaint, in which he, for the most part, contented himself with neither admitting nor denying its allegations, except as to the existence of a $15,500 mortgage upon the property and alleged further that he had purchased the property and in addition to taxes and other expenses had advanced DeMar $2,000 as a part of the purchase price. With his answer he filed his contract of purchase as an exhibit."

While the suit was pending in the Circuit Court No. 2 of Baltimore City it appears from the record in the present case and from the opinion of this court in the case of *DeMar v. Crosco Building Company, Inc., supra,* that Hare paid to DeMar an additional $2,000 and on May 31, 1940, received from DeMar a deed for the property involved therein. Hare was represented at that time by J. Paul Schmidt, a member of the Bar of Baltimore City. Thereafter, on February 15, 1941, in compliance with the decree of this court the property was conveyed by Hare to Crosco Building Company, Inc. Hare testifies in this case that the settlement was made

by Schmidt and that a proper adjustment was made of the taxes at the time of the settlement.

This suit was instituted in the Circuit Court for Anne Arundel County by Hare against Mrs. Tayman to recover from her the sum of $712.91, alleged to be the amount of his loss in excess of $800 on account of taxes due and owing on the property at the time he purchased the mortgage from her. The declaration contains the common counts in assumpsit and a special count on the contract. The case was heard by the court without a jury. The court entered a judment for the plaintiff in the amount of $712.91 and costs, and it is from this judgment that the defendant appeals.

The appeal comes to this court under Trial Rule 9 (c) of the General Rules of Practice and Proceedure, 1941, and is taken and heard according to the practice in equity. The record, however, does not contain a statement of the trial court of the grounds for its decision and the method of determining the damages awarded, as required by subsection (a) of said rule, although it was stated in the argument in this court that the statement was made by the trial court but not transcribed for the record.

We have already noted the pertinent portions of the plaintiff's testimony. Schmidt was then called as a witness for the plaintiff and after testifying about the settlement at the time of the purchase of the mortage, about which there is no dispute, he was then questioned about the settlement between Hare and Crosco Building Company, Inc. His testimony relating to this settlement is evasive and inconclusive. Although the settlement was made by him, he produced no figures to show how it was arrived at or what items of taxes, interest and rents were adjusted. In his direct examination he contents himself with the statement that in the settlement of the Crosco transaction Hare received $12,741.70, that the Dugan mortgage was $9,000, so that the net amount received by him was $3,741.70. He then says that as Hare had paid $4,989.91 for the mortgage, the difference be-

tween these two figures, or $1,248.21, is his loss in the whole transaction, without taking into account the taxes in the amount of $1,512.91 paid by him.

On cross-examination Schmidt's testimony was equally vague. In answer to a question as to whether there was not enough money coming from the Crosco Building Company's contract to have paid Hare in full for every cent he had expended for mortgage, interest and taxes, his answer was as follows: "I believe that in order to determine that I would have to go into rather elaborate accounting because if you had before you this contract of April 20th, 1939, and see how involved it is regarding the adjustment, a contract of sale between Jack DeMar and the Crosco Company, it's the terms of that contract that would make the matter something you could not say 'yes' or 'no' to. I could not say 'yes' or 'no' whether he could have made his money or not."

We cannot see how the settlement was a difficult one. We quote again from this court's opinion in the case of *DeMar v. Crosco Building Company, Inc., supra,* 179 Md. at page 162, 16 A. 2d at page 884: "The bill of complaint was filed October 10, 1939, and the contract whose enforcement was specifically sought was dated April 20, 1939. Under its provisions the land referred to was sold by DeMar to appellee for $6,000, $250 of which had been paid to one Steinberg, attorney and agent for De-Mar, which sum Steinberg was to hold in escrow pending examination of title, and $5,750 was to be paid at the time of settlement, which was to take place within ninety days from date of contract. It was further agreed that the property was to be conveyed to appellee subject to a mortgage thereon which the vendor warranted not to be in excess of $15,500. Appellee, as vendee, agreed to be bound by the terms referred to, and also agreed to pay arrearages in taxes, water rent, paving, city and county benefit assessments, if any, and interest charges on the $15,500 up to the amount of $800, but all mortgage interest in excess of the $800 was to be paid by DeMar at the time of settlement, likewise all rentals collected

by DeMar for the year 1939 were to be adjusted to date of settlement. The agreement contained a warranty that the vendor was receiving an annual income for the year 1939 of $1,772.50 from rentals of shore cottages mentioned on a schedule attached thereto. If the vendee found that rentals did not amount to the figure named, which difference was not occasioned by nonpayment, an allowance was to be made in the reduction of the purchase price based upon a 6 per cent. capitalization 'of the difference in rental from the amount hereinbefore stated and that actually due and payable.' It was further provided that if the existing mortgage should be in default in payments of principal or interest prior to settlement date the vendee should be entitled on behalf of the vendor to make payment of the same in order to prevent foreclosure proceedings, and all such payments should the sale be consummated were to be regarded as payments by the vendee on account of the mortgage. Upon payment of the full purchase price of $6,000 a deed for the property was to be executed by the vendor at the vendee's expense conveying the land by 'a good and merchantable title to the vendee free and clear of any leases or ownership claims in the shore bungalows or any other outstanding interest' other than the $15,-500 mortgage."

At the time of the settlement Hare had paid to DeMar $3,500 on account of the purchase price of $5,000 and approximately $1,500 for taxes due at the date of his contract, and had received a deed for the property. The reasonable presumption is that the payment of the taxes was made for the account of DeMar, the owner of the property, and that the sum so paid by Hare was credited as a part of the purchase price. The admitted payments under the contract and the payment for taxes amount to approximately $5,000, which was the purchase price under the contract. Another adjustment of taxes was provided for in the contract between DeMar and Crosco Building Company, Inc., and it is reasonable to presume that the settlement was made in compliance

with the terms thereof. And the plaintiff so testifies. How then can it be said that the plaintiff has or could possibly suffer any loss arising from taxes due as of April 26, 1939? He has a mortgage of $15,500 and in addition thereto he has paid only $5,000 for the property, including the sums paid by him for taxes. And the Crosco Building Company, Inc., is required, under the decree which was affirmed by this court, to assume or pay the mortgage in the amount of $15,500 and to pay in addition thereto the sum of $6,000 and arrearages in taxes, interest, *et cetera,* if any, up to the amount of $800. Here is a net profit to him of at least $1,000, instead of a loss. Under these circumstances we cannot attach to the testimony of Schmidt, unsupported by the detail of the settlement figures, sufficient probative value to sustain the contention of the plaintiff that he has suffered a loss on account of the payment of the taxes. And there is no other evidence in the record upon which the judgment may be upheld. And the agreement of the defendant was to indemnify the plaintiff from any loss arising from taxes due as of that date, over and above the sum of $800, and not to reimburse him for any payments made on account of such overdue taxes in excess of $800.

The primary responsibility for the payment of the taxes rested upon DeMar, the owner of the property. When the payments were actually made in September and October, 1939, the plaintiff was the purchaser of the property under a written contract of sale, as well as the holder as assignee of the $15,500 mortgage thereon, subject to the rights of Mrs. Dugan, in $9,000 of said mortgage. The legal obligation to pay the taxes rested upon the then owner of the property. *Union Trust Co. v. Rosenburg,* 171 Md. 409, 415, 189 A. 421. We feel, therefore, that when plaintiff paid the taxes, he was paying them as owner or as purchaser under what he then considered a valid contract of sale, and not as mortgagee. And even if he had paid them as mortgagee, to protect his interest in the mortgage, he was entitled to add the sums so paid

to the mortgage debt. *Young v. Omohundro,* 69 Md. 424, 429, 16 A. 120; 36 *American Jurisprudence,* "*Mortgages,*" par. 341, pp. 860, 861. In either event, the plaintiff could suffer no loss on account of the taxes, for which the defendant would be responsible under the contract sued on.

For the reasons stated, the judgment will be reversed, and in accordance with the rule, a judgment will be entered for the appellant against the appellee, with costs here and below.

> *Judgment reversed. Judgment entered for appellant against appellee, with costs here and below.*