## MELCHIOR BUDACZ et al. *vs.* NATHAN FRADKIN.

*Sale of Land—Time as Essence of Contract—Specific Perform-
ance—Delay Caused by Defendant.*

While time is not usually of the essence of a contract for the
sale of land, it is so regarded if an intention to that effect is
clearly shown.      p. 406

While an application for specific performance is always ad-
dressed to the sound discretion of the court, yet where a contract
as to real estate is in writing, and is in its nature and circum-
stances unobjectionable, it is a matter of course to decree spe-
cific performance.      p. 407

Where the terms of a contract expressly provide that it shall
be completely performed and consummated by a certain date
named, a court of equity is bound to give full force and effect
to the terms thereof, unless the failure to perform by the time
designated is caused by the act or default of the party against
whom specific performance is asked, whether the vendor or
vendee.      p. 407

If a party to a contract of sale proves such facts as clearly
amount to a legal excuse for his failure to perform within the
time limited in the contract, and especially if those conditions
are shown to be occasioned by the opposite party, equity will
not compel specific performance by him.      p. 408

A purchaser is entitled to demand a title which is free from
reasonable doubt.      p. 408

Where a purchaser, having discovered that there was out-
standing a prior contract between the vendors and a third
person for the sale of the property, endeavored to perfect the
title by arrangement with such person, but was unable to do
so within the time named in the contract, in the meanwhile
demonstrating his good faith by offering to deposit the balance
of the purchase money with the vendors' attorney, to be paid
to the vendors on the perfecting of the title, *held* that he was

entitled to specific performance, although the time named in
the contract had elapsed.                               pp. 409-411

Courts of equity grant or refuse specific performance of con-
tracts according to the conduct of the parties, circumstances,
and the equities in each particular case.                  p. 412

*Decided July 22nd, 1924.*

Appeal from the Circuit Court No. 2 of Baltimore City
(DAWKINS, J.).

Bill by Nathan Fradkin, assignee of I. Albert Fradkin,
against Melchior Budacz and Marie Budacz, his wife. From
a decree for plaintiff, defendants appeal. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS,
OFFUTT, DIGGES, and BOND, JJ.

*John Holt Richardson* and *Allan W. Rynhart,* for the
appellants.

*Daniel Ellison,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal is taken from a decree of the Circuit Court
No. 2 of Baltimore City, decreeing specific performance of
a written agreement for the sale of certain lots or parcels of
ground located in Baltimore City. The agreement is as
follows:

> "This agreement, made this tenth day of July, 1923,
> between Mr. Melchior Budacz and wife, Marie Budacz,
> of the first parties, J. Albert Fradkin, of the second
> part.
> "Witnesseth, that the said parties of the first part
> do hereby bargain and sell unto the said parties of the
> second part, and the latter doth hereby purchase from
> the former the following described property, situate
> and lying in Baltimore, Md., viz., described as 2002,
> 2007, 2009, 2011, 2013 Lincoln court, and 125 Jones

court, at and for the price of thirty-six hundred dollars ($3,600), of which two hundred dollars ($200) have been paid prior to the signing hereof, and the balance to be paid as follows: Ground rent, $10 each and balance within sixty days from date of July 10th, 1923, to September 10th, 1923. And upon payment as above of the unpaid purchase money, a deed for the property shall be executed at the vendee's expense by the vendor, which shall convey the property by a good and merchantable title to the vendee.

"Taxes, water rent, ground rent to be adjusted at the time of settlement to be paid or allowed for by the vendor to day of settlement, 1923.

"As to possession of the premises, it is agreed that possession upon final settlement in full, and the said parties hereto hereby bind themselves, their heirs, executors and administrators for the faithful performance of this agreement within sixty days from date hereof, said time to be the essence of this agreement.

"Witness our hands and seals.

> "Melchoir Budacz.    (Seal)
> "Marie Budacz.        (Seal)
> "J. Albert Fradkin.    (Seal)"

It appears from the evidence that the appellants, Melchior Budacz and Marie Budacz, were the owners of the six leasehold lots of ground described in the agreement, in Baltimore City, Md., each of said lots being subject to a ground rent of $10; that a certain I. Albert Fradkin, as agent for Nathan Fradkin, purchased the said lots as set out in the agreement for the sum of $3,600, $200 of the purchase price being paid at the time of the signing of the contract, and the balance according to its provisions to be paid within sixty days from that date; that on the day that the contract was entered into, or very shortly thereafter, I. Albert Fradkin transferred to his uncle, Nathan Fradkin, his right, title, and interest under the contract by endorsing on the back thereof the following: "I hereby transfer, for good and valuable consideration, this contract and all right hereunder to Nathan

Fradkin. I. Albert Fradkin"—and delivering the contract to Nathan Fradkin, the consideration for this assignment being a commission of four per cent., or $144, paid I. Albert Fradkin by Nathan Fradkin; that within a day or two from the date of the contract Nathan Fradkin applied to Israel D. Steinbach, president of the Industrial Savings and Loan Association, for a loan on the property described in the contract, in the amount of $2,500; that he was told by Steinbach to return in a few days and he would be informed as to whether or not the loan could be made; that Nathan Fradkin did return at the time suggested and was told that he would be made the loan, and was directed to Daniel Ellison, the attorney of the building association, that the title to the property might be examined and mortgage prepared; that the same day he went to the appellants' residence to get a reference to the title to furnish his attorney, he received information from Newell & Company that the property described in his contract was advertised for sale by some one else; that he communicated this information to his attorney and was told by Mr. Ellison that it was useless to search the title, because he might not get the property, and that he, the attorney, would get in touch with Mr. Budacz's attorney; that the property was actually sold under the advertisement, of which he had learned, and was purchased by some one for the sum of $4,600, the record failing to disclose the name of the purchaser. That subsequently, on July 24th, 1923, Mr. Ellison, attorney for appellee, wrote the appellants the following letter:

"July 24, 1923.

"Mr. Melchior Budacz,
    Mrs. Marie Budacz,
        1744 Eastern Avenue,
            Baltimore, Md.

"Dear Sir and Madam:

"Kindly call and see me at your earliest convenience relative to the sale of the property on Lincoln court, etc., to J. L. Fradkin.

"I would prefer to get in touch with your counsel,
if you will advise me who he is.

"Yours very truly."

That about the same time the attorney for the appellee
got in communication with Mr. Richardson, attorney for the
appellants, and informed him of the difficulty as to the title,
and made the proposition to settle for the property provided
the money was left in some bank or in the hands of Mr.
Richardson until it should be determined whether the alleged
defect in the title caused by a prior contract of sale could be
disposed of, with the understanding that if and when this was
accomplished the money should be turned over to the appel-
lants, or if this could not be done, that the appellee would
re-convey the property to his client; that this proposition
was flatly refused by the appellants' attorney, he stating that
his client wanted the money in cash. The prior contract,
which created the alleged cloud on the title, was as follows:

"May 18th, 1923.

"Received of Paul Stein, fifty dollars ($50.00) as
deposit on properties Nos. 2002-2007-09-11-13 Lincoln
Court and No. 125 Jones Court, subject to an annual
ground rent of $10.00 each at and for price thirty-
three hundred ($3,300.00) for all settlement to be
made within thirty days from above date.

"Mary Budacz.     (Seal)
"Melchior Budacz.   (Seal)
"Per A. Budacz."

That the rights and interest of the vendee under this con-
tract were shortly after its date transferred, first by the
vendee therein named to a Mr. Rodey, and by him conveyed
to Samuel Frahm, by whose authority the property was ad-
vertised and sold by Newell & Company, this sale taking
place on July 23rd, 1923; that the appellee learned of this
prior contract and endeavored to locate Samuel Frahm and
make some arrangement with him which would remove any
obstacle to the consummation of the contract in this case,
by reason of the said prior contract. He was unable to con-

summate this arrangement before September 10th, 1923, the date of the expiration of the time specified in his contract with Budacz, and on that date his attorney again wrote to the appellants demanding that they return deposit of two hundred dollars paid on account of the purchase price, because of their failure to deliver a good title to the appellee. This letter was replied to by the attorney for the appellants on September 13th, in which reply he stated:

"Your favor of September 10, directed to Mr. Melchior Budacz, No. 1744 Eastern Avenue, has been referred to me, and in reply thereto I can only say that Mr. Budacz and wife are ready to give a good and marketable title to the property as referred to in your letter, and must decline to return the $200 as you request, and unless you make some effort at once to take title to this property, we will sell the same at the expense of your client."

That subsequently the attorney for the appellee had several telephone conversations with Mr. Budacz's attorney, in which he told him that the appellee could not take title because of the outstanding prior contract of sale, and asked for a return of the money paid on account of the purchase price, which was refused; and on October 3rd, 1923, the following letter, signed by the appellee and his attorney, was sent to the appellant's attorney:

"October 3, 1923.

"Mr. John A. Richardson,
      "1107 Continental Building,
            "Baltimore, Md.

"Dear Sir:

"Confirming my telephone conversation with you relative to the properties 2002-2007-2009-2011-2013 Lincoln court and 125 Jones court, covered by contract of purchase, under date of July 10th, 1923, between Melchior Budacz and Marie Budacz, his wife, of the first part, and I. Albert Fradkin, of the second part, which contract was assigned by I. Albert Fradkin to Nathan Fradkin, I beg to say that Mr. Frad-

kin will accept title to the said properties, provided the time for settlement is extended for thirty days from this date. Kindly acknowledge this letter, agreeing to extend the time, so that Mr. Fradkin can have the title examined and prepare for the money to pay therefor.

"You will recall that Mr. Fradkin would not accept title to the property heretofore, because of the existence of a contract of sale covering the same properties to someone else.

Yours truly,

"Daniel Ellison,<br>"Nathan Fradkin."

That at or about the date of this letter the appellee, by an arrangement with Samuel Frahm, was able to relieve the title of the defect of the contract of May 18th, and for this reason additional time was asked for in which to have the title examined and prepare mortgage for the money to be used in payment for the property. The record fails to disclose any reply to the letter of October 3rd, but the fact is that no settlement was made, and no conveyance of the property; that on November 16th, 1923, the bill of complaint was filed in which it was alleged that the appellee was ready and willing to carry out his part of the agreement, but that the defendants refused to perform their part of said agreement, and praying for a decree of specific performance. The appellants in their answer to the bill of complaint denied these allegations and averred that time being the essence of the contract, and the sixty days having expired without any attempt on the part of the plaintiffs to perform their part of the contract, they are not entitled to any relief in the matter.

By the written agreement of the parties, time was made the essence of the contract, and the decision in this case rests upon the question of whether, in a contract where the time of its performance is stated to be an essential part thereof and it is not consummated within the time limit, under such circumstances as set forth in the testimony above, the vendee is entitled to a decree for specific performance. In agree-

ments for the sale of land time is not usually held to be of
the essence of the contract, but if from the terms of the con-
tract it is clearly shown that the parties so intended it, or,
as in this case, where the parties expressly state such to be
the agreement, it is generally given full force and effect.
While it is true an application for specific performance is
always addressed to the sound discretion of the court, yet
where a contract respecting real estate is in writing and is in
its nature and circumstances unobjectionable, it is as much
a matter of course for courts of equity to decree a specific
performance of it as it is for a court of law to give damages
for the breach of it. *Smoot* v. *Rea,* 19 Md. 405; *Brewer* v.
*Herbert,* 30 Md. 301. And so where the terms of a contract
expressly provide that it shall be completely performed and
consummated by a certain date named therein, courts of
equity are bound to give full force and effect to the terms
thereof, unless the failure to perform by the time designated
is caused by the act or default of the party against whom
specific performance is asked to be decreed, whether he be
vendor or vendee.

In the case of *Cheney* v. *Libby,* 134 U. S. 68, the Court, in
speaking of the contract in that case, says:

"The parties in this case, in words too distinct to leave
room for construction, not only specify the time when each
condition is to be performed, but declare that 'time and
punctuality are material and essential ingredients' in the
contract; and that it must be 'strictly and literally' executed.
However harsh or exacting its terms may be, as to the appel-
lee, they do not contravene public policy; and therefore a
refusal of the court to give effect to them, according to the
real intention of the parties, is to make a contract for them
which they have not chosen to make for themselves. * * *
But there are other principles, founded in justice, that must
control the decision of the present case. Even where time
is made material, by express stipulation, the failure of one of
the parties to perform a condition within the particular time
limited will not in every case defeat his right to specific
performance, if the condition be subsequently performed,

without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The discretion which a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it, may, and of necessity must, often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions."

If a party to an agreement of sale proves such facts as clearly amount to a legal excuse for his failure to perform within the time limited in the contract, and especially if those conditions are shown to be occasioned by the opposite party, a court of equity will not compel specific performance of the contract. In the case before us the appellee contends that the existence of a prior and outstanding contract of sale by the appellants to Samuel Frahm or his assignor of the same property now in controversy is such legal excuse. In the case of *Gill* v. *Wells,* 59 Md. 492, it was stated:

"It is a principle, obviously just, in the law relating to the specific performance of contracts, that the vendee is entitled to have that for which he contracts, before he can be compelled to part with the consideration he agreed to pay. He is not bound to take an estate fettered with encumbrances by which he may be subjected to litigation to procure his title; * * * The vendee is not bound to accept anything short of an unencumbered legal estate in fee, the title to which is free from reasonable doubt."

To the same effect, see *Sharp Street Station* v. *Rother,* 83 Md. 289; *Chew* v. *Tome,* 93 Md. 244; *A. S. Abell Co.* v. *Firemen's Ins. Co.,* 93 Md. 596.

In *Chew* v. *Tome, supra,* Judge Jones said: "This doctrine announced in the text books and supported by authorities has been fully recognized and adopted by this court in the case of *Gill* v. *Wells,* 59 Md. 492. The clearness and force with which it was there expounded and illustrated renders unnecessary here more than a reference to that case. We may take, however, as peculiarly apt here a quotation

which there appears from the case of *Dobbs* v. *Norcross,* 24
N. J. Eq. 327, in which it is said: 'Every purchaser of
land has a right to demand a title which shall put him in all
reasonable security and which shall protect him from anxi-
ety, lest annoying, if not successful, suits be brought against
him, and probably take from him or his representatives land
upon which money was invested."

And in the case of *A. S. Abell Co.* v. *Firemen's Ins. Co.,*
*supra,* Judge Fowler, speaking for the Court in reference
to that case, said: "But while it is settled that he cannot
demand a title that is absolutely perfect, yet a court of
equity will see that he gets a title which is free from reason-
able doubt"; and also quoted from the case of *Dobbs* v.
*Norcross,* 24 N. J. Eq. 327, to the effect that: "As to what
doubt will be sufficient, no general rule can be laid down.
The doubt must be considerable and rational, such as would
and ought to induce a prudent man to pause and hesitate,
not based on captious, frivolous, and astute niceties but such
as to produce real *bona fide* hesitation in the mind of the
Chancellor."

In the case now under consideration the evidence shows
that the appellee, shortly after entering into the contract to
purchase, ascertained for the first time that there was an
outstanding prior contract between the appellants and Samuel
Frahm, and that Samuel Frahm was at that time advertising
the property for sale at public auction, this information
coming to the appellee through Newell & Company, the auc-
tioneers. The information thus obtained was confirmed by
the facts that the sale so advertised actually took place on
July 23rd, thirteen days after the date of the contract of
sale in this case. After becoming aware of the situation as
thus presented, the appellee reported the condition to the
appellant and was told that the prior contract did not amount
to anything and had no legal effect. This conversation is
denied by the appellants, but nevertheless it is true that the
appellee sought to find and make arrangements with Samuel
Frahm, whom up to that time he did not know, and whose
whereabouts he testified he was finally able to ascertain

through information secured at the interview with the appellants. The appellee informed his attorney, who was also the attorney for the building association which had agreed to loan the sum of $2,500 on the property for the purpose of completing payment therefor, of the information he had secured, and was told by the attorney that it would be useless for him to examine the title because he might not get the property. His attorney then wrote the letter of July 24th, 1923, to the appellants, requesting an interview with their attorney. Subsequently the appellee and his attorney had an interview with the attorney for the appellants, at which interview the latter was told that appellee could not take the property, because of a defect in the title due to the outstanding prior contract of sale, but that if that defect could be successfully removed the appellee would take the property, and as an evidence of his good faith offered to deposit in escrow the balance of the purchase money in some bank or in the hands of the appellants' attorney, upon the understanding that if the defect in the title was removed, the money should be paid over to the appellants, and if not, it should be returned to the appellee, and he, the appellee, would re-convey the property to the appellants. This proposition was refused, the appellants' attorney stating that his clients desired cash that they could use at the time of the settlement and conveyance. The appellee diligently endeavored to perfect the title by an arrangement with the vendee under the prior contract, but was not able to do so before September 10th, 1923, the last day on which, under the strict terms of the contract, the same could have been consummated. On that day the appellee's attorney wrote to the appellants requesting the return of the deposit of two hundred dollars made by the appellee on the day of the signing of the contract. A reply to this letter was received from the appellants' attorney under date of September 13th, refusing to return the deposit and stating: "Unless you make some effort at once to take title to this property, we will sell the same at the expense of your client." About three weeks later the appellee succeeded in

making such an arrangment with the vendee under the
former contract of May 18th, as removed the encumbrance
of that contract upon his title, and immediately thereafter
his attorney and himself jointly wrote to the attorney for the
appellants under date of October 3, 1923, stating that the
appellee was willing to accept title provided the time for set-
tlement be extended to thirty days in order that the appellee
might have the title examined and make preparations for
obtaining the money from the building association to pay for
the property. In this letter attention was also called to the
fact that the appellee would not accept title to the property
heretofore because of the existence of the contract of sale,
covering the same property, to someone else.

The doubt existing as to this title was considerable and
rational, and was not based on captious, frivilous, and astute
niceties, but was such as would produce real *bona fide* hesita-
**tion in the mind of the chancellor.** The condition of the
title and the doubt as to its validity was caused by the act
of the appellants, of which the appellee had no knowledge at
the time he entered into the contract. To excuse his delay
it is not essential that the appellee be in such a position as to
enable him to successfully resist a decree of specific perform-
ance in behalf of the appellants. The appellee did all that
equity should require of him to remove the doubt existing
as to the title, and the appellants alone were responsible for
its existence. As soon as he learned of it, with due dili-
gence and without unnecessary delay, he succeeded in remov-
ing the obstacle standing in the way of the performance of
the contract, and immediately communicated his desire and
readiness to comply with its terms. In the meantime he
had demonstrated his absolute good faith and sincerity by
agreeing to deposit the balance of the purchase money in
escrow with the appellants' attorney, or, if preferred by the
appellants, to cancel the contract upon the return of his
deposit. The appellants were unwilling and refused to accept
either of these propositions. The appellee, upon being con-
vinced of their final refusal to convey the property, within
a few weeks instituted these proceedings. Upon the well

settled principle that courts of equity grant or refuse specific performance of contracts according to the conduct of the parties, circumstances, and equities, in each particular case, we find in this case no error in the decree passed and same must be affirmed.

*Decree affirmed, with costs.*