MARY MARGARET DOERING, ET AL. *v.* HERBERT FIELDS, ET AL.

[No. 41, October Term, 1947]

*Decided January 9, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Benjamin L. Freeney* for the appellants.

*J. Purdon Wright,* with whom was *W. Frank Every* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

Appellees brought this complaint in the Circuit Court of Baltimore City to obtain specific performance of a contract for the sale to them of leasehold property, 4313 Glenmore Avenue in Baltimore City. The chancellor granted them a decree, and it is from that decree that this appeal is taken.

On August 31, 1945, the appellants and the appellees entered into an agreement by which the appellants sold and the appellees purchased the property, subject to a $90 ground rent, at the price of $7500, "of which $500 have been paid prior to the signing hereof and the balance to be paid as follows; cash within 45 days from date of contract." The contract was on a printed form which contained the words "time is of the essence of this contract." These words were erased. At the end of the 45 day period, not having received any word at all from the appellees, the appellants consulted their attorney. He sent a letter to the appellees advising them that he represented the appellants and notifying them that unless settlement was made within ten days from date, the contract would be declared off and the deposit forfeited as liquidated damages for its breach. This letter was dated October 17, 1945, was mailed in Baltimore October 18th, and was received on October 20th by the appellees. Upon receipt of this letter the appellees went to see the real state agent through whom they had been brought in touch with the appellants, and on October 22, 1945, made an application to a building association, to which they were

directed by the real estate office, for a loan of $6000 on the Glenmore Avenue property. This loan which would net $5700 was approved by the building association on October 29th. This fact was communicated to the appellants' attorney, but as the ten days had expired, appellants declined to convey the property. As a result this suit was brought.

The appellees had a home on Brookwood Avenue which they anticipated selling and applying the proceeds to the purchase of the Glenmore Avenue property. They had listed this property with a real estate agent on August 13th, but it was not sold until November 26th, and when it was sold it was for $1000 less than the amount at which it had been listed. The appellees admitted they were not in any position to carry out their agreement until they had sold the Brookwood house. They had not engaged any lawyer to examine the title to the Glenmore property during the 45 day period, nor did they make any effort to arrange for a loan on the property or in any way to prepare themselves to carry out the agreement. Neither of the appellees had told the appellants that their purchase was dependent on selling their own house. The representative of the real estate company who made the sale said she was told that the Brookwood house had to be sold before the appellees could make payment for the Glenmore house, but there is no evidence that this was communicated to the appellants.

At the time when this contract was made, and during the entire period up to the time the suit was filed, the Court will take judicial notice that there was a severe housing shortage throughout this country and in Baltimore City. Federal agencies and State agencies were trying to arrange some method by which houses could be built, primarily for returning soldiers, but even this was very difficult in view of the shortage of building materials. The City was overcrowded with people who had come there for work or other purposes during the War, rents were frozen by the O. P. A., and as a result a great many people, in order to find a place to live,

were buying houses at almost any price. As a result, there was a fluctuating and rising real estate market. These are facts which must be taken into consideration in the decision of this case.

The remedy of specific performance is a very ancient one and, like most equitable remedies, was originally based on the inadequacy of any remedy at law. But see Code, Art. 16, Sec. 255. It has been discussed by many text books and in many cases in this Court. In view of these discussions there could be no reasonable basis for prolonging this opinion by stating the law in general. Nor is there need for any extended consideration of what a purchaser must show in order to have specific performance. In Story's Equity Jurisprudence, 14th Ed., paragraph 988, it is said: "The complainant in such an action is asking the Court to require another to do equity, and it is encumbent upon him to convince the Court that the strict performance of the contract will not work a needless hardship upon the defendant." The rule is well established that while courts will ordinarily decree specific performance of contracts for the sale of real estate, unless there is some reason to the contrary, this is not a matter of right but is a question addressed to the sound discretion of the Court under the circumstances of the particular case. As is said in Miller's Equity, paragraph 656, "The question is not what the Court must do, but what it may do under the circumstances; the question is whether the exercise of the power of the Court is demanded to subserve the ends of justice, for, unless the Court is satisfied that the application to it is fair, just and reasonable *in every respect,* it refuses to interfere, but leaves the party to other remedies for redress."

The complainant must seek relief promptly and as stated in the English case of *Milward v. Thanet,* 5 Ves. 720, "A party cannot call upon a Court of Equity for a specific performance unless he has shown himself ready, desirous, prompt, and eager." In Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 2, paragraph 400, it is stated in a discussion of the maxim that he who seeks equity

must do equity, "By virtue of this principle, a specific performance will always be refused * * * when the specific enforcement would be oppressive upon the defendant, or would prevent the enjoyment of his own rights, or would in any other manner work injustice." The same author in Vol. 4, paragraph 1409, states: "Although time is not ordinarily essential, yet it is, as a general rule, material. In order that a default may not defeat a party's remedy, the delay which occasioned it must be explained and accounted for. The doctrine is fundamental that a party seeking the remedy of specific performance, and also the party who desires to maintain an objection founded upon the other's laches, must show himself to have been 'ready, desirous, prompt, and eager.' " In a late case on the subject in this Court, *Coster v. Arrow Building & Loan Ass'n, Inc.*, 184 Md. 342, 41 A. 2d 83, 86, it is said "Where a purchaser seeks specific performance of a contract for the sale of real estate, notwithstanding long delay in making payments, the delay must not have been willful and must not have worked any harm to the vendor." See also *Newman v. Johnson*, 108 Md. 367, 70 A. 116 *DeCrette v. Bonaparte*, 139 Md. 252, 114 A. 880, *Laughran v. Ramsburg*, 174 Md. 181, 197 A. 804, *Soehnlein v. Pumphrey*, 183 Md. 334, 37 A. 2d 843, *Morris v. Wilson*, 187 Md. 217, 49 A. 2d 458. In each case the Court decides whether it is right and just that a specific performance should be decreed. If the vendee has not unduly delayed, if the vendor is not hurt, then the decree will be granted. But if these elements do not appear, the equity court will decline to interfere and will leave the parties to their legal remedies.

In the case before us the vendors signed a contract to sell their home. That contract was on a form which contained the statement that time was to be of the essence of the contract. The fact that this statement was in fine print would not have destroyed its effect had it been left in the signed agreement. Nor do we think the fact that it was stricken out before execution emphasizes or increases the elastic nature of the period

of 45 days inserted. That stands in this contract just as it would have stood had the other statement never been in the printed form. Had the vendor's attention been specially directed to the erasure, and a reason given and accepted for it, the suitation might be different. But there is no evidence that this was done, so we consider the contract as if no such clause had ever been in the original form upon which the agreement was superimposed.

The vendors assumed, as they had a right to assume, that the vendees intended to carry out the purchase within the 45 days provided for that purpose. It is true that they are presumed to know that such a period in a contract affecting real estate is relative and is not to be interpreted absolutely literally. It is just as true that it means something. It is not to be totally disregarded. It is an approximation of what the parties regard as a reasonable time under the circumstances of the sale. The vendors, therefore, had a right to expect that the vendees would be ready *about* that time. The vendees, on the other hand, were under an obligation to make the necessary efforts to consummate their purchase within the period they had agreed upon. They could not sit by and do nothing, and then claim a further indefinite period. That would tie the hands of the vendors, perhaps prevent them from finding another home within their means, in a rising real estate market, or, at any rate, keep them from the use of the purchase price they expected to get. In the speculative condition which then obtained in real estate in the City of Baltimore, the payment of interest would not compensate them for the lapse of time.

There is no evidence that the vendors were told that the vendees had to sell their own home before they could carry out their agreement. Certainly, it was no part of the contract itself, and no sensible persons would tie up their property upon such a condition, even in an active real estate market. And it was not true, in fact, because the vendees, when they finally said they were ready to consummate the purchase, were going to finance

it through a building association without waiting to sell their own property.

When the 45 days had expired the vendors consulted their attorney, and were told they could not consider the sale terminated unless they gave the vendees notice to that effect. The latter were given such a notice, requiring them to settle in 10 more days. Then for the first time the vendees did something. They applied for a loan, and had one approved after 12 days. Then they advised the attorney for the vendors of this fact, but even then they were not ready. The title had not been searched, the deed and the mortgage still had to be prepared, and more delay would ensue. How much more is purely problematical.

Had the vendees made the slightest effort within the 45 days to carry out the contract, they would be in a different position. Since they sat by, doing nothing at all, the vendors were compelled to wait, at least until the expiration of what might be a reasonable time. But since a time, presumed to be reasonable by all parties was fixed in the contract, they were not obliged to wait indefinitely after that time had expired. Under the circumstances, ten days more was enough. It cannot be reasonable or just for a court to require appellants to be put at such a disadvantage. That is not what is meant by saying that time is not of the essence of a contract for the sale of real estate. It does not mean that one party can rely upon that principle to do nothing and embarrass the other. It means that neither party will be held strictly to the time limited, not that either party will be at liberty to disregard it entirely. The statement of the time limit is not nugatory, because it is not literally construed. "Courts of Equity have regard to time so far as it respects the good faith and diligence of the parties." Story, Eq. Jur., 14th Ed., paragraph 1064.

There is another indication that the appellees were not eager to get the property. They did not take action at once. Their property was sold on November 26th, although it is not clear from the evidence whether that

492

was the date they signed the contract or whether the sale was consummated then. In either event, they waited until January 18, 1946, before bringing their suit, although they knew by November 1st that the appellants intended to consider their contract at an end. This is not the diligent prosecution of their rights expected of parties eager and willing to buy. This delay is entirely unexplained in the testimony.

We do not think the vendees have so conducted themselves as to justify them in asking the Court now to enforce the contract they completely neglected and we do not think the Chancellor was justified in taking such action under the circumstances. For these reasons the decree will be reversed.

*Decree reversed and bill dismissed with costs.*