DELLA VINCENTI, ET AL. *v.* ARTHUR C. KAMMER

[No. 59, October Term, 1947.]

524

*Decided January 15, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Paul Berman and Sigmund Levin,* with whom was *Theodore B. Berman* on the brief, for the appellants.

*Joseph W. Spector* and *Charles Jackson* for the appellee.

GRASON, J., delivered the opinion of the Court.

This is a proceeding to specifically enforce a contract for the sale of leasehold properties. The bill of complaint was filed on October 24, 1946, in the Circuit Court No. 2 of Baltimore City, by Arthur C. Kammer, plaintiff (appellee) against Della Vincenti and Rudolph Vincenti, her husband, and Eleanora Vincenti defendants (appellants). The latter, who is a daughter of Della Vincenti, has since married and is now Eleanora Vincenti Rose.

The bill, in substance, alleges that Della Vincenti owned two improved leasehold properties known as 2119 and 2121 Maryland Avenue; that she signed a contract, dated the 28th day of November, 1945, whereby she agreed to sell the same to the plaintiff for $10,500, of which $1,000 was paid prior to the signing thereof and the balance of $9,500 was to be paid within thirty days.

It contained a provision that time was the essence of the agreement. The contract was exhibited with the bill. It is alleged that promptly after the execution of the contract the plaintiff proceeded to have the title to the properties examined; that the search revealed three judgments, two standing in the name of Benjamin Harris, in the respective amounts of $250 and $2500, and one standing in the name of Benjamin S. Harris, for one cent damages and costs of $31.65. Benjamin S. Harris was a predecessor in title to the property 2121 Maryland Avenue, and these judgments were open on the records of the Superior Court of Baltimore City. It is alleged that the said Benjamin S. Harris is probably the same person who previously owned 2121 Maryland Avenue. It is charged that since the discovery of these judgments repeated efforts have been made to obtain some information concerning Benjamin S. Harris from Della Vincenti, or some proper disposition of these judgments, so that they would not constitute a lien on the property, but that Della Vincenti has refused to concern herself about these judgments, claiming that the same were not recovered against her and that they do not constitute liens on her property. It is further alleged that while title to 2119 Maryland Avenue stood in the name of Eleanora Vincenti, as a matter of fact the title to the same actually belonged to Della Vincenti and was placed in the former's name for the purpose of convenience. It further alleged that since the discovery of the judgments aforesaid, and that title to 2119 Maryland Avenue is in the name of Eleanora Vincenti, plaintiff has endeavored to effect a settlement of the property with Della Vincenti and obtain a deed therefor, but has been unable to do so because of the refusal of the defendant, Della Vincenti, to execute a deed to him conveying a good and merchantable title; that Della Vincenti has at no time informed him that Eleanora Vincenti was "in title" to premises 2119 Maryland Avenue; that the plaintiff has always been and is now ready, willing, able and anxious to carry out the terms of his contract, but he is unable to obtain a good

and satisfactory title to said "property" unless the court assumes jurisdiction in the matter and declares a clarification of the outstanding liens on said properties; that negotiations have been pending between the attorney for the plaintiff and attorney for the defendant, Della Vincenti, for the removal of the said flaw in the title by way of the judgments open against Benjamin Harris; that this was the only issue raised, as there was no question theretofore that Della Vincenti owned the two properties; that the "defendant" advertised in the Sunday Sunpaper on October 20, 1946, the aforesaid properties for sale to the general public; that the plaintiff had no adequate remedy at law.

The bill prayed: (a) That the court assume jurisdiction for the purpose of the clarification of the issue between the parties. (b) That said agreement be specifically enforced against Della Vincenti, her husband, Rudolph, and Eleanora Vincenti, upon payment of the balance of the purchase price by the plaintiff. (c) That, in the alternative, the court appoint a trustee to convey title to said properties, or either of them, to the plaintiff, and to receive the purchase money due and unpaid, or such portion as the court might find would be due for one of the said properties. (d) That pending the determination of the suit defendants be restrained from disposing of said properties, and (e) For general relief.

To this bill the defendants filed a combined demurrer and answer. The answer denied all of the material allegations of the bill, and charged the plaintiff with laches. The chancellor heard testimony in the case and at the conclusion of the same, and after argument of solicitors, overruled the demurrer to the bill of complaint and decreed specific performance as to both pieces of property. From that decree this appeal was taken by the defendants.

These properties were placed by Della Vincenti with George F. Heubeck & Co. for sale. They were listed separately, and each listing was signed by Della Vincenti in her married name, Mrs. Rudolph Vincenti. The

listing price for 2121 Maryland Avenue was $5,500, and the price for 2119 Maryland Avenue was listed at $5,000. The properties were to be sold together, neither could be sold singly. These two listing contracts were offered in evidence.

George F. Huebeck obtained the contract offered in evidence from the plaintiff, together with a check for $1,000 drawn to his order. On November 28, 1945, at around supper time, Heubeck called at the home of Mrs. Vincenti on North Charles Street. She was not at home when he arrived, but her daughter, Eleanora, received him. Heubeck said he talked with Eleanora for the purpose of convincing her that a sale of the property by her mother would best subserve her mother's interest. It was his policy to persuade relatives of one who wanted to sell to think that a contemplated sale was advantageous, and for this reason he talked with Eleanora Vincenti. He told her that the properties were in a bad state of repair and required the expenditure of a large sum of money to restore them; that he had tried hard to get the best price for them and that $10,500 was the best price he could obtain, and was a good price, and it was to her mother's interest to sell the properties. Mrs. Vincenti arrived home and her daughter retired, leaving her mother and Heubeck alone. After some time Mrs. Vincenti went into the next room, where her daughter was, and Heubeck heard them talking. He knew that they were talking about the properties, and by that time he knew that Eleanora Vincenti had an interest in them. Della Vincenti and her daughter then talked with Heubeck. On this visit he discovered, for the first time, that Eleanora Vincenti was interested in some way in these properties. He did not ask her what her interest was, nor did he ask her to sign the contract. He wanted to retain the check which the plaintiff had given him for $1,000, but Della Vincenti insisted that it be turned over to her, and he endorsed the same and gave it to her. He did not attempt to explain why he did not ask Eleanora Vincenti to sign the contract, other than to say

that he thought Della Vincenti owned the properties and he was interested mostly in having the contract signed. Since that day neither Heubeck, the plaintiff, nor an agent or representative of either, have seen, written to, or called Eleanora Vincenti over the telephone.

It is perfectly plain that this contract did not bind Eleanora Vincenti, for the Statute of Frauds is a bar to the plaintiff's enforcement of the same against her. The plaintiff, however, contends that Della Vincenti, under the circumstances of this case, was the agent of Eleanora, and as such had power to bind her under this contract. There is no evidence in the case that Della represented Eleanora for the purpose of selling her property. The visit of Heubeck to Della's home and what happened there, certainly does not establish an agency that conferred authority upon Della to sell Eleanora's property. We think, from the evidence concerning that visit, it can be inferred that Eleanora refused to sign the contract, and there is a total absence of evidence to show that Eleanora ratified her mother's act in the attempting to sell her property. There certainly was error, therefore, in enforcing this contract as to both pieces of property.

Is the plaintiff entitled to partial performance, that is, a decree that Della Vincenti be required to deed to him her property, 2121 Maryland Avenue, upon such terms as the chancellor would deem just?

It is one of the cardinal principles in cases like this that the purchaser must act promptly. In *Morris v. Wilson*, 187 Md. 217, 49 A. 458, 463, we held that "a bill for specific performance must be filed promptly."

In *Doering v. Fields*, 187 Md. 484, 50 A. 2d 553, the contract therein involved provided that the same should be consummated within forty-five days from its date. It did not contain a clause that time was of the essence of the contract. After the expiration of the forty-five days, and not having heard from the vendees, the vendor's counsel wrote the vendees, giving them ten days within which to make settlement under the contract. The

vendees failed to act with sufficient promptness and were dilatory in several respects, one of which was that the title examination was not started until after the forty-five day period. This court held that the ten day extension was reasonable and refused to specifically enforce the contract.

In this case the contract provided that time was the essence of the contract. In *Phillips Roofing Co., Inc. v. Maryland Broadcasting Co.*, 184 Md. 187, 40 A. 2d 298, 301, we quoted from *Scarlett v. Stein*, 40 Md. 512, as follows:

" 'Whether time is to be considered as of the essence of the contract must, of course, depend upon the intention of the parties. When this intention is expressed in clear and unambiguous terms, the contract must speak for itself, and the liability of the parties must be determined by the plain and obvious meaning of the language used.' This language was quoted with approval in *Diamond v. Shriver*, 114 Md. 643, 80 A. 217."

The contract was signed on November 28, 1945. The bill of complaint was filed on October 24, 1946, nearly eleven months after the signing of the contract. The evidence shows that the title examination was not entirely completed on January 29, 1946, over thirty days after the time limited for settlement had expired, and there is testimony tending to show that title examination was not started until after thirty days from the date of the contract. When it was discovered that Della Vincenti did not own 2119 Maryland Avenue, and that these open judgments were thought to be liens on 2121 Maryland Avenue, the plaintiff demanded that these liens be satisfied by Della Vincenti. This she refused to do, claiming that they were not liens against her property. Mr. Kwasnik, the attorney who examined the title, said he was doubtful whether the two large judgments were liens on this property, as one Benjamin S. Harris was a predecessor in title and the two large judgments were against Benjamin Harris. This controversy between Della Vincenti and the plaintiff, as to

these judgments, continued certainly from January 29, 1946, until April 16, 1946, when the real estate agent, Heubeck, wrote a letter to Mrs. Vincenti, on behalf of the plaintiff, in which he said: "he (the plaintiff) asked me to tell you that if you do not deliver title to him within five days his attorney, Mr. William I. Norris of the Central Savings Bank, Baltimore 2, Md., will proceed legally against you". Nothing was done by the plaintiff from that date until he filed his bill of complaint on October 24, 1946, more than six months after the date of this letter. In the meantime the plaintiff showed no disposition to perform his part of the contract, and never indicated a disposition to pay the purchase price. He did not file the bill in this case until he was stimulated to do so by the advertisement in the Baltimore Sun of the sale of these properties. He could not play fast and loose with this contract. It was his duty to act promptly in the matter and in conformity with the terms of the contract. This he did not do.

In *Newman v. Johnson*, 108 Md. 367, 70 A. 116, Johnson entered into a written contract to buy certain lands from Newman. He was not satisfied with the condition of the title. He wanted a certain release. The vendor thought the release unnecessary. After considerable delay in the matter, Newman cancelled the contract and sold the property to a Mr. Flanigan. Johnson filed a bill for specific performance of the contract against Newman. The court at page 375, of 108 Md., at page 119 of 70 A., said:

"Even if it were conceded that Johnson was in perfect good faith in insisting upon his right to demand a release from the railroad, he should have elected either to accept the title without a release, or cancel the contract upon Newman's refusal to procure a release and enforce whatever rights, if any, he had under those conditions. He could not play fast and loose with the contract, speculating upon the contingency of a resale, instead of complying with his own absolute obligation as to payment."

So in this case the appellee could not play fast and loose concerning the judgments which he desired released. He should have accepted such title as he could obtain under the contract, or have cancelled the same and resorted to such other action as was appropriate. He has not shown himself to be ready, willing and anxious to carry out his part of the contract. He was not prompt. In fact, he has done nothing but argue with Della Vincenti about the judgments which he says are liens against her property.

The appellee relies on *Gill v. Wells*, 59 Md. 492; *Bryant v. Wilson*, 71 Md. 440, 18 A. 916, and *Budacz v. Fradkin*, 146 Md. 400, 126 A. 220. We do not think these cases are applicable to the case at bar.

In the *Budacz case* the delay was caused by the vendor. He was not permitted to set up his own wrong to make out a case of laches against the vendees.

In addition to the cases referred to, we might cite *Kaufman et al. v. Adalman et al.*, 186 Md. 641, 47 A. 2d 755, and *Garbis v. Weistock*, 187 Md. 549, 51 A. 2d 154.

From the evidence in this case we are of opinion that the plaintiff is guilty of laches, that bars him from any relief. The decree of the chancellor must be reversed and the bill of complaint dismissed. It will not be necessary, therefore, for us to rule on the demurrer, or to pass upon the question of his right to partial specific performance, for his tardiness bars all relief under his bill.

*Decree reversed, bill of complaint dismissed,*
*with costs to appellants.*