EMKEY ET UX. *v.* SIEGEL

[No. 116, October Term, 1948.]

*Decided March 11, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hyman A. Pressman* for the appellants.

*H. Richard Smalkin,* with whom were *Smalkin & Hessian* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

On March 26, 1947, the appellants, owning a fee simple property No. 101 Bennett Road in Essex, Baltimore County, Maryland, signed a standard contract of sale by which they agreed to sell the property to the appellee for $5,500. $100.00 was paid at the time of the signing, and

the balance was to be paid in cash within six months from the date of the contract, it being stated therein that time was of the essence. Two days after this contract was executed, Emkey stated he went with the real estate agent who handled the contract, to see the appellee and told the latter that he was not going through with the deal, and that the appellee said he was going to do nothing about it. This is denied by the real estate agent, Mr. Inman, who said that Emkey did go with him to see Siegel but the conversation related by Emkey did not take place. Siegel denied that Emkey ever went with Inman to see him, and said he did not believe he had ever spoken to Emkey.

About the same time the contract was signed, another contract, dated March 27, 1947, was made by the appellants with some people named Gardner, for the purchase of No. 107 Alcock Road, also in Essex. The check which the Emkeys received for their property was endorsed by them, and turned over to the Gardners as a deposit. Their contract with the Gardners was to pay $1500 in cash and to get a mortgage for the balance on which they would have to pay $38 a month. This contract was to be settled within sixty days.

On May 29, 1947, just a little more than two months after the signing of the contract, the Emkeys' attorney notified Siegel that they declared the contract null and void for three reasons, first, they never received an executed copy of it; second, they never received the consideration of $100; and, third, on account of misrepresentation. Siegel's attorney wrote the Emkeys' attorney on June 19th, stating that Siegel would expect the appellants to perform the contract within the period stipulated, and that he would like to know whether they would so perform. There was no answer to this letter, and no further written communication between the parties.

It appears from the testimony that Emkey was laid off, where he was working. He went to the finance people, and they would not accept his mortgage on the Gardner property, because he was not working. As a

result, he made no effort to go through with the Gardner contract, and the Gardners did nothing about enforcing it. He did not get back his deposit from them, and Siegel never got back his deposit from the Emkeys although the record does show an admission from Siegel that it was offered to him later, but just when he does not state. He declined to accept it. Another fact which should be noted, is that Emkey testified that he got the impression that the appellee was not going to press the matter, and, a few weeks before suit was filed, he put an archway between his kitchen and living-room. This was sometime in January, 1948.

Nothing further happened until February 2, 1948, when the bill of complaint in the present case was filed by Siegel to compel specific performance by the Emkeys. The Emkeys answered denying due diligence by the appellee. The court below held that there were no facts in the case indicating that the Emkeys had been prejudiced by the delay, and decreed performance. From this decree the Emkeys appeal.

We have had occasion in two recent cases to consider the position of a complainant who belatedly seeks, through the medium of a court of equity, to compel another party to perform a contract of sale. In the first of these cases, we discussed the general principles involved at some length, holding that, since he who seeks equity must do equity, the complainant must account for and explain any delay in bringing suit, and must show himself to have been "ready, desirous, prompt and eager." In that case, the purchasers knew by November 1st that the vendors considered the contract to be at an end. They waited until January 18th before bringing their suit. There was no provision in the contract that time was of the essence, as there is in the case at bar, but the contract was supposed to be performed within forty-five days. There was shown no special damage suffered by the vendor on account of the delay, but we took judicial notice of the fact that there was a severe housing shortage at the time, and that there was a fluctuating and rising real

estate market. We declined to enforce the contract. *Doering v. Fields,* 187 Md. 484, 50 A. 2d 553.

In the other case, which was also brought by a purchaser against a vendor, the contract was dated November 28, 1945. The settlement was to be made within thirty days, and there was a provision in the contract that time was of the essence. Title examination was not started until thirty days after the date of the contract, and was not entirely completed for more than thirty days after that. There was a controversy about some judgments, and, on April 16, 1946, a letter was written on behalf of the purchaser to the vendor, stating that if title was not delivered within five days, legal proceedings would be taken. Title was not delivered, and nothing more was done until October, 1946, more than six months after the date of the letter, and after the vendors had advertised the property for public sale in a newspaper. We said that the purchaser could not play fast and loose with his contract, it was his duty to act promptly in the matter and in conformity with the terms of the contract. We declined in that case to enforce the agreement because of the purchaser's delay. *Vincenti v. Kammer,* 189 Md. 523, 56 A. 2d 688.

In the case before us, if we are unwilling to accept Mr. Emkey's testimony as to the repudiation of the contract a few days after it was made, it is quite clear that he did repudiate it on May 29, 1947. From that time on, nothing was done for eight months. The date on which the contract was to be consummated was September 26, 1947. From that date, it was over four months before anything was done. It does not appear that either the appellee or his attorney made any effort to get in touch with the appellants, or to discuss the matter with them after June 19, 1947, when the letter above referred to was written. This was more than seven months before the bill was filed. Under these circumstances, the appellants, while they were not justified in breaking their contract, were justified in thinking that the appellee acquiesced in their action. They were prejudiced to the extent

that they made some alterations to the house, although it is not shown how great these alterations were, nor how much they cost. What caused the appellee suddenly to make up his mind on February 2, 1948, to bring this suit for specific performance is not disclosed, but it clearly appears that up to that time, if he was willing, he was certainly not eager and anxious. We think his delay bars him from the remedy he seeks.

The decree will be reversed, and the bill of complaint dismissed, with costs to the appellants.

*Decree reversed. Bill of complaint dismissed, with costs to appellants.*