SILVER HOLDING CORPORATION *v.* SHEELER

[No. 116, September Term, 1962.]

*Decided March 4, 1963.*

36

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*A. Frederick Taylor,* with whom were *Martin & Taylor* on the brief, for appellant.

*Clarence E. Pusey, Jr.,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The complainant appeals from a decree of the Circuit Court for Baltimore County dismissing its bill insofar as it sought specific performance of a contract for the sale of real estate. (It required the return of the deposit made under the contract.) The contract was executed October 9, 1959, and was in a customary form under which time was of the essence. The complainant, Silver Holding Corporation, was the purchaser and the respondent, Dora C. Sheeler, and her husband were the vendors. The property in question was their home. The total purchase price was $18,000.00, of which $1,000.00 was to be paid at the time of settlement and the balance was to be secured by an interest-bearing mortgage maturing three years thereafter, with right of prepayment.

The only controversy on this appeal is over the Chancellor's findings of fact that the purchaser had played fast and loose with the contract and had not been diligent in seeking its performance, and that there was no estoppel against the seller to prevent her from raising the defense of delay. (Cf. *Lissau v. Smith,* 215 Md. 538, 138 A. 2d 381.) On these findings the Chancellor held that the vendee was not entitled to specific performance. He relied upon a number of cases, particularly *Newman v. Johnson,* 108 Md. 367, 70 A. 116, where an easement had been abandoned, but not released of record. In that case, even though time was not (as here) of the essence of the con-

tract, long delay after the settlement date specified in the contract, without election by the purchaser either to take the property subject to the easement or to cancel the contract was held a bar.

The general rule is well established in this State that in order to be entitled to specific performance of a contract for the sale of real estate, the purchaser must be "ready, desirous, prompt and eager" to consummate the contract, whether or not time is of the essence thereunder. See *Doering v. Fields,* 187 Md. 484, at 488-89, 50 A. 2d 553; *Garbis v. Weistock,* 187 Md. 549, 51 A. 2d 154; *Vincenti v. Kammer,* 189 Md. 523, 530, 56 A. 2d 688; *Triton Realty Co. v. Frieman,* 210 Md. 252, 256, 123 A. 2d 290; *Chapman v. Thomas,* 211 Md. 102, at 108, 126 A. 2d 579 (rule recognized, not found applicable); and Miller, *Equity Procedure,* § 661. Where, as in the present case, time is declared to be of the essence of the contract, equity will not ordinarily grant specific performance where the party seeking that remedy has failed to perform or to act to enforce the contract within the time specified therein. *Soehnlein v. Pumphrey,* 183 Md. 334, 337, 37 A. 2d 843 (rule stated, but not applicable; time was not made of the essence); *Tarses v. Miller Fruit & Produce Co.,* 155 Md. 448, at 453-55, 142 A. 522 (unexcused delay by vendor); *Budacz v. Fradkin,* 146 Md. 400, at 407, 126 A. 220 (rule stated, excusable delay on part of purchaser). Under some circumstances the party resisting specific performance may be estopped to set up the other party's delay. *Lissau v. Smith, supra.*

Under the contract settlement was to be effected by April 9, 1960, and was set for that date. Several weeks prior thereto the respondent's husband had died, and she was unwilling to attend the settlement without having her son with her. Due to some confusion or delay, she and Mr. Held, the real estate agent who had negotiated the sale, did not meet the son as planned, and the son went alone to the office of the title company where the settlement was to take place, arriving somewhat late. The respondent did not get there at all, but Mr. Held telephoned some time after the hour fixed for the settlement and spoke to Mr. Harry Silver, president of the complainant corporation, at the title company's office. With Mr. Silver at the

time was Mr. Milton Schwaber, the principal for whom the complainant was acting.

The purchaser had requested a title company report soon after signing the contract and was advised by the title company that the property was subject to a mortgage in the amount of $800.00, which had not been released of record. The title company had ascertained, however, from the attorney named in the mortgage, that the mortgage had been paid in full, that the mortgagee had died, and that the above attorney would be willing to undertake to obtain authority from the Orphans' Court to release it of record at a total cost of approximately $50.00. The first that the real estate agent heard of the mortgage was in the telephone conversation on the intended day of settlement and nothing had previously been said to the seller about it.

We think that the Chancellor was fully warranted in holding that this defect was insubstantial and did not excuse the purchaser's inaction. There was evidence, however, that this defect was seized upon by the purchaser. There was testimony that a representative of the purchaser or its principal told the seller's son at the abortive settlement that there would be no settlement that day because of it, and there was also evidence indicating that the purchaser afterwards continued to stand upon it as a ground for delay.

There was also testimony that the matter dragged on for months after the settlement date of April 9, 1960, and that in a conversation some time thereafter, which took place at a shopping center in which Mr. Schwaber was interested, Mr. Schwaber stated to the seller, in substance, that he was in no hurry to complete the purchase, that he did not need her property and that it took a lot of money for the shopping center stores. The comparative ease and inexpensiveness of obtaining the release of the old mortgage which had actually been paid is quite evident, and tends to support the conclusion of the Chancellor that the purchaser was not diligent in seeking to enforce the contract.

The appellant relies on testimony to the effect that the surviving seller, after her husband's death, did not wish to go through with the sale and that she sought to get the contract changed by increasing the amount of the cash payment to be

made at the time of settlement, in order to be able to buy a new home. The appellant urges that this shows that any delay in settlement was entirely satisfactory to the seller and that she is in no position to set up delay on the part of the purchaser as a defense to the suit.

That delay was considerable. The date for settlement was April 9, 1960. Nothing of moment happened thereafter until January, 1961, and even then action by the purchaser was apparently prompted only by a letter dated January 25, 1961, from the attorney whom the seller had by that time employed. This letter was addressed to the real estate broker, but a copy was sent to Mr. Silver. In it counsel stated that the seller was "declaring the contract 'null, void and unenforceable' " because settlement had not been made by April 9, 1960.[1] Mr. Silver responded on January 31, 1961, stating the purchaser's past and present readiness to settle for the property under the terms of the contract, ascribing the delay to the failure of the seller to obtain a release of the mortgage, and setting a new settlement date, February 7, 1961. The seller did not attend. This suit was filed on March 30, 1961.

The Chancellor saw and heard the witnesses and the question presented to us is solely one of fact. It depends upon the inaction of the purchaser and the alleged acquiescence or agreement of the seller to the delay. After a careful review of the record we cannot find that the Chancellor's determination which was based upon the evidence, which consisted mainly of the testimony of witnesses whom he saw and heard, should be held to be clearly erroneous; and under Maryland Rule 886 a, the decree must accordingly be affirmed. See also *Garbis v. Weinstock, supra,* where as to one phase of the case a somewhat similar controversy over facts existed and a decree denying specific performance was affirmed.

> *Decree affirmed, with costs to the appellee.*

1. The seller also demanded that the real estate agent refund the $1,000.00 deposit to the purchaser. He took the position that he was entitled to retain it, having earned a commission on the sale in excess of this amount. This matter is not involved on this appeal.