RYMLAND, ET UX. v. BERGER

[No. 240, September Term, 1965.]

262

*Decided April 21, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, and McWILLIAMS, JJ., and CARTER, J., Chief Judge Of The Second Judicial Circuit, specially assigned.

*Franklin Goldstein,* with whom were *Henry G. Burke, A. Fred Freedman, Marvin Klein* and *Burke, Gerber & Wilen* on the brief, for appellants.

*Joseph S. Kaufman*, with whom were *Melnicove, Asch, Greenberg & Kaufman* on the brief, for appellee.

CARTER, J., by special assignment, delivered the opinion of the Court.

This is an appeal by Murray J. Rymland and Blanche Rymland, his wife, (sellers) from an order of the Circuit Court of Baltimore City, granting conditional specific performance of a contract for the sale of lots to Melvin Berger, (purchaser).

The material facts of the case, established by the pleadings and a stipulation, are: Murray J. Rymland, as the owner of two lots located on Reisterstown Road in Baltimore County, executed a standard multiple listing contract with a realtor on March 5, 1964. On March 19, 1964, officials of the realtor submitted the lots to the purchaser and on that date a standard contract of sale was executed by Mr. Rymland and the purchaser. Mrs. Rymland was a party to the contract but her name was signed by another, since she was temporarily unavailable. The purchase price was $45,000; $1000 of which was paid at the time of execution with the remainder to be paid on day of settlement, which was limited to 90 days from the date of the contract. Time was expressly stated to be of the essence. The contract specified:

> "Title to be good and merchantable, free of liens and encumbrances except as specified herein and except: Use and occupancy restrictions of public record which are generally applicable to properties in the immediate neighborhood or subdivision in which the property is located. * * *."

Prior to the signing, the purchaser examined the property and was informed by the realtor that the lots were zoned 'manufacturing restricted'. In the process of examining the title, counsel for the purchaser discovered that in 1923 a prior owner, by deed, had placed a restriction on a parcel containing 7.3 acres of which the subject lots, containing about 1½ acres, were a part, restricting the use to residential purposes. Thereafter, counsel for the purchaser contacted two title companies in an effort to have the title guaranteed as good and merchantable,

notwithstanding the restrictions, which the companies refused to do. On June 9, 1964, counsel telephoned Mr. Rymland, advised him of the restrictions and that settlement, which had been previously scheduled for the next day, would have to be postponed. The time for settlement under the contract was June 17, 1964. There is no evidence that Mr. Rymland agreed to the postponement or what his response was to this advice. He had no knowledge of the restrictions prior to the advice. On the same date, counsel for the purchaser also contacted Mr. Goldman, representative of the realtor, and similarly advised him whereupon he offered to attempt to secure waivers of the restrictions from the neighboring property owners. Promptly thereafter waivers were prepared and attempts made to secure signatures but only two of the three owners involved signed. There is no evidence to establish knowledge of the sellers of this activity nor any express authorization therefor. Thereafter, counsel for the purchaser again endeavored to secure the title company's guarantee of a good and merchantable title without exceptions, but unsuccessfully. After receiving the advice on June 9, 1964, Mr. Rymland advised Goldman he would be out of the city on the day of settlement whereby an unacknowledged deed was signed by both Mr. and Mrs. Rymland conveying the property to the purchaser, and placed with an agent for the sellers. On June 16, 1964, one day before the time limited for settlement, counsel for the purchaser wrote the sellers advising that the purchaser could not consummate the settlement until the restrictions were removed and that he was ready, willing and able to settle whenever this was accomplished. On June 18, 1964, counsel for the sellers replied by letter setting forth that the contract provided time was of the essence; that the purchaser had violated the agreement by failing to settle on June 17, 1964; that there was no responsibility on the sellers to obtain waivers of the restrictions; and that, accordingly, the contract was cancelled and the deposit of $1000 appropriated as part of the liquidated damages for the breach. On June 25, 1964, the purchaser instituted this suit for specific performance.

After hearing the case on the pleadings and stipulation, Judge Barnes passed a decree granting conditional specific performance and ordering: (1) the sellers to deposit $3000 in the

registry of the court as security to defray the expenses for removal of the deed restrictions; (2) requiring the sellers through counsel to forthwith proceed to take all necessary steps to remove the restrictions including the institution of suit in the Circuit Court for Baltimore County and appeal to the Court of Appeals of Maryland, if the same might become necessary; (3) that upon a final determination that the restrictive covenants are no longer valid and enforceable, the sellers should convey the fee simple property to the purchaser in accordance with the terms of the contract of sale, the purchase price to be $45,000 less payment of the $1000 deposit as stated in the contract; (4) that all other terms of the contract not inconsistent with the order should be ratified and confirmed; and (5) pending a final determination of the validity of the deed restrictions that the sellers be enjoined from conveying or encumbering the property.

The questions raised by the appeal are: (1) did the chancellor err in finding that the sellers were required under the contract to convey the property free of the restrictions; (2) were the circumstances surrounding the failure of the purchaser to settle within the time limited sufficient to constitute legal justification for this non-compliance; and (3) did Mrs. Rymland ratify the contract of sale.

The purchaser contends that the sellers may not raise the question of the applicability of the restrictions to other property in the immediate neighborhood or the property in the sub-division in which the lots are located because these issues were not raised and determined below. (See Maryland Rule 885.) The contract of sale which provides that the sellers should "convey good and merchantable title except use and occupancy restrictions of public record which are generally applicable in the immediate neighborhood *or* (emphasis supplied) in the sub-division which the property is located," was an exhibit to the bill of complaint and the chancellor in his opinion found that "the restrictions are not generally applicable to property in the immediate neighborhood *and* (sic) the sub-division in which the property is located and hence the presence of the restrictions result in a breach of the contract of sale, if not removed." (Emphasis supplied.) It appears, therefore, that the applicability of the restrictions generally to the property men-

tioned in the contract was both presented to and decided by the court below, although the question of their general applicability to the sub-division of which the subject lots were a part, does not appear to have been separately determined.

Under the language of the contract, if the restrictions are generally applicable to either property in the immediate neighborhood *or* the sub-division in which the lots are located, they are permissible restrictions against the title which the sellers were required to deliver to the purchaser under the terms of the contract of sale. The character of the 7.3 acre parcel appears to comply with the statutory requirements of a "sub-division." Baltimore County Code, § 44-1 defines a "sub-division" as "the division of any tract or parcel of land * * * into two or more lots * * * or other divisions of land for the purpose * * * of building development for rental or sale * * * provided, however, that this definition of a subdivision shall not include divisions of land for agricultural purposes." The record shows the subject restrictions were made applicable to the 7.3 acre tract from which the two lots were conveyed; that the size of these lots is 220 x 312 feet each, improved by a separate dwelling on each; that the area is zoned 'manufacturing restricted,' with some industrial activity. It seems reasonable to infer from these facts that the division of the 7.3 acre tract into two or more lots was not for agricultural purposes. It was, therefore, a "sub-division" within the meaning of the statutory definition of that term, of which the subject lots were a part and to which the restrictions were generally applicable. Such restrictions were, therefore, permissible under the terms of the contract. Under this holding, we do not reach the question of the general applicability of the restrictions to property in the immediate neighborhood.

In respect to the significance to be attached to the failure of the purchaser to pay the purchase price within the time limited, we agree with the chancellor below that he was legally justified in failing to do so and that his default would not prohibit his right to specific performance. As Judge Barnes pointed out, ordinarily where time is of the essence, in a contract for the sale of land, a failure to perform within the time limited will disentitle the party in default from obtaining specific performance. See *Silver Holding Corp. v. Sheeler,* 231 Md. 35, 37,

188 A. 2d 562 (1963); *Triton Realty Company v. Frieman,* 210 Md. 252, 123 A. 2d 290 (1956); *Garbis v. Weistock,* 187 Md. 549, 51 A. 2d 154 (1947). However, there is a well settled exception to this rule which recognizes that where the circumstances surrounding the failure to perform on time make it inequitable to deny the defaulting party his right to the remedy, it will not be denied. This Court so held in *Budacz v. Fradkin,* 146 Md. 400, 407, 126 Atl. 220 (1924) and *Chapman v. Thomas,* 211 Md. 102, 109, 126 A. 2d 579 (1956). In granting specific performance to the purchaser in the *Chapman* case, the Court, speaking through Judge Hammond, said it made no difference whether time was of the essence so far as legal justification was concerned and in determining that justification existed under the facts of that case, at p. 110:

> "While a purchaser cannot demand a title which is absolutely perfect, a court of equity will see that he gets a title which is free from reasonable doubt, a doubt that is considerable and rational, one which would induce a prudent man to pause, one not based on captious, frivolous and astute niceties, but such as to produce 'real *bona fide* hesitation in the mind of the Chancellor.' In the case before us, Thomas was advised by the title company that unless the encroachment was cleared up, he could not get a completely good title or secure a loan and, further, the encroachment took ten feet from the front of his lots and so interfered with their use as planned. We think that his doubt as to the title was considerable and rational, and not captious, or based on astute niceties, and there is no question but that it produced a real *bona fide* hesitation in the mind of the Chancellor."

Under the criteria set forth in the *Chapman* case, the facts of this case appear sufficient to constitute legal justification for not performing within the time limited. Here two title companies advised the purchaser on two occasions that the deed restrictions prohibited them from guaranteeing a good and merchantable title. If valid, the restrictions would prohibit the use of the property for commercial purposes, which was their

planned use. The purchaser pointed out these facts to the sellers, immediately prior to the time limited for payment of the balance of the purchase price, requested that the sellers remove the restrictions and advised that he stood ready, willing and able to perform as soon as they were removed. Upon receipt of this information, the sellers promptly advised the purchaser they considered the contract cancelled. Within a matter of a few days the purchaser brought suit for specific performance. This Court agrees with the chancellor that the title weakness here was such as would induce a prudent man to pause before accepting it; that the purchaser's refusal to accept was not based on captious, frivolous or astute niceties; that the title was not free from reasonable doubt as to the validity of the restrictions; and that such restrictions did produce a real bona fide hesitation in the mind of the chancellor. In addition the purchaser acted with great diligence in discovering the restrictions and showed he was ready and eager to fulfill his obligations under the contract as soon as they were removed. Under these circumstances, we agree that the failure of the purchaser to tender the balance of the purchase money within the time limited by the contract was legally justified and does not prohibit his right to specific performance.

We further agree that the seller, Blanche Rymland, fully ratified and confirmed the contract of sale which her husband signed and to which her signature was placed by another. In compliance with her obligation under this contract, she later signed a deed conveying the property mentioned in the contract to the designated purchaser. This conduct on her part, without evidence to the contrary, shows prima facie (a) that she was acquainted with the terms of the contract and (b) that she desired to ratify and confirm her obligation under it. See *Miller v. Loyal Order of Moose, Lodge No. 358*, 179 Md. 530, 20 A. 2d 156 (1941); *Rimmey v. Getterman*, 63 Md. 424 (1885).

*Decree reversed and case remanded for the passage of an order decreeing specific performance of the contract of sale without condition, in accordance with this opinion; the appellee to pay the costs.*