**Toxi CLARK, Appellant,**

v.

**James ROUTE and Joyce Route, Appellees.**

No. 07–CV–40.

District of Columbia Court of Appeals.

Submitted Jan. 17, 2008.

Decided July 3, 2008.

Sidney S. Friedman and William H. Thrush, Jr., were on the brief for appellant.

Kurt Berlin and Daniel S. Roth, were on the brief for appellees.

Before REID and THOMPSON, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

This case arises out of a contract to purchase residential real estate in the District of Columbia. Appellant Toxi Clark seeks reversal of the trial court's order entering judgment denying her specific performance of the contract pursuant to which she had agreed to purchase real property at 1228 Trinidad Avenue, Northeast, from appellees James and Joyce Route. We affirm.

## I.

The contract between the parties required the sellers to make thirteen "repairs/replacement," including "waterproof[ing] the basement w[ith] warranty, with all repairs to be approved by a licensed professional." The parties took part in a walk-through inspection of the premises two days before the agreed-upon settlement date of November 3, 2004. The trial court found that sellers had completed all the repairs and replacements required by the contract except for the above-quoted provision that related to waterproofing.

As to waterproofing, the seller, Mr. Route, stated when the walk-through inspection reached the basement that he had had two waterproofing contractors come in, and both said that the basement did not need waterproofing. When Mr. Route so informed Ms. Clark during the walk-through, she said "see you in court," terminated the conversation, walked out of the premises, and never spoke with the Routes again about the transaction. Ms. Clark then contacted the settlement company and postponed indefinitely the settlement scheduled for November 3, 2004. Before that date she also telephoned the officer of the Washington Savings Bank of Annapolis, Md., to whom she had applied for the loan and told him that there were "problems with the seller," and as a result the bank put her loan application in "limbo."

Ms. Clark testified that she could not recall whether she had received a loan commitment letter, and could not produce one at trial. According to a bank officer, however, Ms. Clark's loan application had been reviewed by the bank's underwriting section which approved it for a closing on November 3, 2004. Mr. Route stated at trial that he "was going to show up at settlement to go to settlement," but acknowledged that he had not planned to provide a waterproofing certificate, and was not going to have waterproofing performed.

## II.

Ms. Clark filed suit on December 10, 2004. At pretrial, she limited her claim to specific performance, and sought no money damages. In denying Ms. Clark's motion for summary judgment, the trial court observed that "there may be a factual dispute whether plaintiff was ready, willing and able to proceed with settlement." [1]

1. The court also stated its view as of that early stage of the proceeding that sellers' "failure to waterproof the basement and to provide a waterproofing warranty was a material breach of the contract." Subsequent colloquy between court and counsel showed the judge entertained doubts about that. The court ultimately did not include such a conclusion of

After the close of evidence, the trial court stated that, aside from one inconsistency, she had "believe[d] everyone who testified here." The inconsistency concerned what Ms. Clark said when the walk-through inspection focused on the waterproofing. In that regard, the trial court did not credit Ms. Clark's version of the conversation, but found that she did in fact say "see you in court" at that juncture.

Following completion of the testimony and the submission of legal memoranda by the parties, the court made written findings of fact and conclusions of law. The findings of fact were essentially the same as set forth in our summary of the facts above.[2] Most significant were the findings that "plaintiff refused to proceed to settlement unless defendant waterproofed the basement and gave her a warranty," that "defendant phoned the settlement company on the date of the settlement and was informed that plaintiff had postponed settlement indefinitely," and that "[a]lthough plaintiff did not have financing in place for a settlement on November 3, 2004, it is likely she would have been approved for a loan had she directed the loan officer to proceed with her application."

The court's determinative conclusions of law underlying its denial of specific performance were that "[b]y indefinitely postponing the settlement date of November 3, 2004, plaintiff was unilaterally modifying the contract comparable to the modification of contract in *Ferguson [v. Caspar,* 359 A.2d 17 (D.C.1976) ]"; that "per *Ferguson,* 'plaintiff could have refused to consummate settlement and then have brought an action against the seller for

such damages as (she) sustained. Alternatively, (plaintiff) could have elected to complete the settlement ... (and) could have sued to recover from the seller such damages as (she) may have sustained by reason of (defendant's failure to waterproof the basement and provide a warranty)' "; that "plaintiff's attempt to distinguish *Ferguson* is unpersuasive especially since the plaintiff in *Ferguson* did more to demonstrate readiness to proceed with settlement than plaintiff who unilaterally postponed the settlement"; and that "based on the foregoing the court concludes that plaintiff did not prove by a preponderance of the evidence that she was ready, willing and able to proceed with the settlement on November 3, 2004, and therefore plaintiff is not entitled to specific performance."

### III.

Ms. Clark filed a timely appeal from the judgment denying her specific performance. Before this court, Ms. Clark argues (1) that her indefinite postponement of the settlement was not a change in the terms of the contract and did not amount to a breach thereof, but rather a breach by the sellers caused the postponement; (2) that the trial court misstated the election of remedies; (3) that the court's statement that the plaintiff in *Ferguson, supra,* did more to demonstrate readiness than Ms. Clark was incorrect; and (4) that the court's ultimate conclusion that she "was not ready, willing and able to settle cannot logically follow" from its subsidiary conclusions.

 "Specific performance is an extraordinary equitable remedy, and the de-

law in its findings of fact and conclusions of law at the end of trial.

2. The court noted in its findings that plaintiff presented evidence that there had been a water problem in the basement, but stated that

in light of its resolution of the case it would not have to "resolve the factual dispute about whether there was in fact a water problem in the basement."

termination whether or not to order specific performance is confided to the 'sound and informed discretion' of the trial court." *Independence Management Co., Inc. v. Anderson & Summers, LLC,* 874 A.2d 862, 867–68 (D.C.2005) (quoting *Drazin v. American Oil Co.,* 395 A.2d 32, 34 (D.C. 1978)). "We must accept the trial judge's finding that [appellant] was [not] ready, willing and able to perform the contract, and therefore [not] entitled to specific performance, so long as that finding is not clearly erroneous." *Id.* at 868 (citing *Flack v. Laster,* 417 A.2d 393, 400 (D.C. 1980)).

In its written order denying plaintiff's motion for summary judgment and in its colloquy with counsel preceding its ruling on the defendant's motion for judgment at the end of plaintiff's case, the trial court took cognizance of two of this court's most recent cases dealing with specific performance of contracts for the sale of real property, *Ferguson v. Caspar, supra,* and *Independence Management, supra,* and observed that neither was entirely on point.

The trial court concluded that our opinion in *Ferguson, supra,* is the most relevant of our precedents with respect to the appropriate course appellant should have taken in order to gain specific performance. In *Ferguson* this court affirmed the trial court's denial of specific performance, and also set forth what the prospective purchaser of the real estate involved there could have done to obtain that relief. Appellant Ferguson had entered into a contract to purchase an unrestored row house in the Capitol Hill area from appellees Caspar for the sum of $23,000. *Ferguson, supra,* 359 A.2d at 18. The contract provided that the sellers would convey the premises free of all notices of municipal regulations existing as of the date of the contract. *Id.* Significantly, it also stated

that this particular term of the contract would survive the delivery of the deed, just as the contract in the instant case provided regarding waterproofing. *Id.* Shortly before the parties entered into the contract, a District of Columbia housing inspector gave Mrs. Caspar official notice of 126 housing code violations. *Id.* The notice called for their correction within sixty days. *Id.* As of the date of the closing, Caspar had not remedied them. *Id.* at 19. The Fergusons became aware of these circumstances before the date of settlement, and obtained an estimate of the cost of their correction, which was in excess of $6,000. *Id.*

The parties met on the agreed-upon settlement date, and went through the usual steps of a settlement, including the signing of settlement sheets for the respective parties which the settlement company had prepared. *Ferguson, supra,* 359 A.2d at 19. Mrs. Caspar executed and delivered the deed to her property to the settlement officer, and purchaser Ferguson delivered his personal check payable to the settlement company, representing the balance due as set forth on the Fergusons' settlement statement. *Id.*

As the parties were rising to leave, the attorney for the Fergusons handed separate letters to the settlement officer and to Caspar's son who accompanied Mrs. Caspar. In effect, the letters instructed the settlement officer to hold in escrow the amount of the estimated cost of correcting the outstanding housing code violations rather than to turn the full amount of the proceeds of the sale over to Caspar, until such time as the Fergusons gave the settlement officer notice that Mrs. Caspar had corrected the outstanding violations. *Ferguson, supra,* 359 A.2d at 19.

This court affirmed the trial court's conclusion that the Fergusons should be denied specific performance because they

" '. . . were not ready and willing to perform in accordance with the terms of the agreement . . . .' and their '. . . effort to impose conditions other than those specified in the contract resulted in a breach of their contractual duty, and a forfeiture of their right to specific performance of the contract.' " *Ferguson, supra,* 359 A.2d at 24. The purchasers had, in effect, made a unilateral reduction in the purchase price, and thus were not ready, willing and able to perform their obligations under the contract. *Id.* Notwithstanding the fact that the sellers were in breach of the contract as of the time of settlement because of their failure to remedy the housing code violations, the purchasers elected to proceed, delivered a check in ostensible payment of the amount due, and then unilaterally imposed upon the settlement officer instructions to withhold part of the purchase price, thus causing the officer to suspend the process of settlement and conveyance of the property and also causing the settlement company to withdraw its services after the parties failed to come to an agreement about the matter within a reasonable time after the conference. *Id.* at 19.

While there are obvious dissimilarities between the operative facts in *Ferguson* and in this case, there are also at play in both certain principles that bear upon the right to specific performance. Especially instructive is the passage in *Ferguson* which set forth alternatives available to the purchasers:

Nor is there any dispute that Mrs. Caspar, as record owner of the property, was officially notified of the violations. Prior to the time for settlement, none of these violations had been corrected. Under these circumstances, the purchasers could have refused to consummate settlement and then have brought an action at law against the seller for such damages as they may have sustained. Alter-

natively, the purchasers could have elected to complete the settlement, and under the survival provisions of the contract, could have sued to recover from the seller such damages as they may have sustained by reason of her failure to correct the outstanding violations.

*Id.* at 23.

Unlike the Fergusons, Ms. Clark here did not attempt unilaterally to reduce the sale price. Rather she simply left the walk-through inspection of the premises with the words "see you in court"; postponed the settlement indefinitely thereby passing up the opportunity to discuss the sudden impasse over waterproofing and a related warranty; never spoke with the Routes about the matter again; and filed suit less than six weeks later.

During the colloquy between court and counsel during closing arguments, the trial court framed the decisive question as whether Ms. Clark could conduct herself as she did and "still be treated as someone who was ready, willing, and able in the circumstances here." This question has special significance as it was posed by a trial judge acting as a chancellor in equity, responsible for determining whether Ms. Clark's conduct in the particular circumstances of this case showed her ready, willing and able to perform.

As we said in *Ferguson,* "[T]o sustain the right to specific performance of their contract, the purchasers must show that they have performed or have offered to perform all of the obligations required of them by the contract." 359 A.2d at 24.

While it is clear that Ms. Clark had available the two courses of action suggested in *Ferguson, i.e.,* to sue for damages or to proceed through settlement and then sue the sellers for any outstanding breach of the waterproofing/warranty provision of the contract, the question remains whether

she could also pursue with success the course she chose, *i.e.,* call off the settlement, not have any contact with the sellers, cease her efforts to finalize financing, and file suit for specific performance.

The trial judge saw Ms. Clark's behavior as comparable to the buyers' unilateral reduction in the sale price in *Ferguson* and went on to conclude that she had not been "ready, willing and able to proceed to settlement." [3]

Other precedents will assist our review of the trial judge's conclusion. We begin by considering the precedent other than *Ferguson* that was most discussed by the trial court and counsel during argument in Ms. Clark's pretrial motion for summary judgment as well as at the conclusion of trial. In *Independence Management, supra,* the purchaser of an apartment building under a contract of sale was forced to wait to perfect the financing arrangements for an indefinite period while it awaited the outcome of the efforts of the members of a tenants' association to purchase the building under the District of Columbia Rental Housing Commission and Sale Act.[4]

The contract provided that after expiration of the "financing contingency" that gave the contract purchaser a period of up to sixty days to obtain financing, settlement was to occur within ten days, or as soon thereafter as the title report could be arranged, an appointment for a settlement could be made with the title company, a survey procured, and all other contingencies in the contract satisfied. *Independence Management, supra,* 874 A.2d at 864.

After the tenants' efforts to purchase the building failed, the seller notified the purchaser of that development and de-

manded that the purchaser attend a closing and complete settlement on a date set by seller ten days after the notice. *Independence Management, supra,* 874 A.2d at 866. When purchaser failed to appear at that closing, seller declared purchaser in default on the contract. *Id.*

We affirmed the trial court's ruling that, after notice that the tenants would not purchase, the purchaser was entitled to a reasonable time to arrange financing. The purchaser was not required to complete financing arrangements during the indefinite time period that the tenants had to try to purchase the building. We held that the seller was not entitled under the contract, which did not specify a time for settlement should the tenants attempt to purchase, to force the purchaser to complete closing, with financing in place, within ten days of being notified that the tenants would not purchase the building. *Id.* at 868–69. Relying on language from *Independence Management,* appellant argues that she should not have been required to complete arrangements for financing or to take part in a closing, as the law does not require the doing of a futile act. Because of the significantly different circumstances, however, *Independence Management* sheds no light on whether the purchaser here, in order to obtain specific performance, had the obligation to complete her financing arrangements after a disagreement arose as to waterproofing and a related warranty. Moreover, this case differs from *Independence Management* in that the sellers here did not refuse to complete the sale.

While the trial court in the case before us took special note of Ms. Clark's unilateral and indefinite postponement of the settlement, the court necessarily was

---

**3.** We take the trial court's reference to "settlement" on the contract to mean ready willing and able to proceed to consummate the sale.

**4.** D.C.Code § 42–3404.02(a) (2001).

mindful of the entirety of Ms. Clark's behavior, which included not completing financing arrangements, ceasing to communicate with the sellers, and indefinitely postponing settlement; and all of these factors can fairly be deemed to underlie the trial court's decision not to grant Ms. Clark the equitable relief she sought.

Precedent from our neighboring jurisdiction Maryland, through which we derive the common law of the District of Columbia,[5] helps to delineate the sort of conduct required of a purchaser who seeks specific performance.

*Chapman v. Thomas,* 211 Md. 102, 126 A.2d 579 (Md.1956), arose out of the refusal of a seller, Chapman, to proceed with the sale of real estate to the contract purchaser, Thomas. The Court of Appeals of Maryland affirmed the trial court's grant of specific performance to the purchaser, stating:

■ The contract here answers the description of one justifying specific performance. The appellants' [the Chapmans'] argument to the contrary, which

we find untenable, is that Thomas did not show himself ready and eager to perform, and was in default for not settling within thirty days. Whether time is or is not of the essence in a contract for the sale of real estate, a purchaser who seeks specific performance has two primary obligations. First he must seek relief with due diligence and show that under all the circumstances he was "'ready, desirous, prompt, and eager,'" as an early English case, quoted with approval in *Doering v. Fields,* 187 Md. 484, 488, 50 A.2d 553, 555 [1947], put it. (Further citations omitted.) Second, if he delays settlement while attempting to have the seller remedy a claimed defect in the title of the property, he must, when it becomes clear the seller will not meet his demands, either accept the title as it is and promptly tender settlement, or cancel the contract. (Citations omitted.)

*Chapman, supra,* 126 A.2d at 582.[6]

Regarding the first of the two primary obligations the court described—that the

---

**5.** Maryland principles of equity have been viewed as applying in the District of Columbia in light of the District's adoption of the common law of Maryland. *See Johnson v. Fairfax Village Condominium IV Unit Owners' Ass'n,* 641 A.2d 495, 506 n. 22 (D.C.1994) (District of Columbia Courts may look to Maryland law for equitable principles "because the District of Columbia derives its common law from the state of Maryland"); *see also Baker v. Gaffney,* 141 F.Supp. 602, 603 (D.D.C.1956) ("in the absence of authorities in the District of Columbia, decisions of Maryland courts on questions of common law are authoritative since we derive our common law from Maryland"). *See generally* Bernard C. Steiner, *The Adoption of English Law in Maryland,* 8 Yale L.J. 353, 353–54 (1899) (tracing origins of Maryland law to English law).

**6.** The reason seller Chapman gave for his refusal was that purchaser Thomas delayed the closing of the real estate transaction beyond the closing date specified in the con-

tract. *Chapman,* 126 A.2d at 581. The purchaser's supposed "delay" came about because he undertook to resolve apparent substantial encroachments on the property shown by a survey, and also undertook to have the seller remedy the problem that the property had been sold at a tax sale due to the seller's nonpayment of the real estate taxes of the previous year. *Id.* Closing was originally set for July 21, 1954, or such later time as a report on title was secured, but was delayed while purchaser saw to the remedying of the two problems described above, and to accommodate the absence of one of the sellers from the area at a convention. *Id.* at 580–81. After that date, the sellers informed purchasers that they did not intend to go through with the contract. *Id.* at 581. Purchasers nonetheless had the title company schedule a closing for September 15, 1954. *Id.* Purchasers showed up at the closing and tendered to the settlement officer the balance of the purchase price called for by the contract. *Id.*

purchaser must show that under all the circumstances she was "ready, desirous, prompt, and eager"—Ms. Clark's conduct in this case falls far short of the mark. Rather than even discuss the matter further when the waterproofing issue arose, Ms. Clark simply said "see you in court," walked out of the house and had no further contact with sellers. The sellers produced evidence that the basement did not leak through the walls or floor, but that water could come in under the basement door if the drain outside was plugged by leaves. One of the two professional waterproofers who inspected the basement testified that he had done "waterproofing" in the sense that he had "drained the water away from the back of the building, and ... unstopped the drain." The seller, Mr. Route, testified that the persons he had brought in to take care of all thirteen items of "repairs / replacement" that were specified in the contract had done "some upgrading outside the basement door to offset the water, because when the drain was stopped up with leaves, the basement would take in water." Mr. Route acknowledged, however, that at no time had he offered a warranty regarding waterproofing.

These facts have significance in that they shed light on the matters that routinely would have been discussed further by the parties before or at a settlement if they were genuinely interested in completing the transaction. For example, they would have discussed whether Ms. Clark would have been satisfied with a warranty only instead of both a warranty and the performance of further work on the premises.

The second of the two primary obligations of a purchaser who would seek specific performance, as set forth in *Chapman*, i.e., to accept a possibly defective title as it is and promptly tender payment, or cancel the contract when it becomes clear that the seller will not meet purchaser's demands regarding a claimed defect in the title, has no direct application to this case, as there is no issue of title here. It is similar to our holding in *Ferguson, supra,* however, in which we pointed out that a remedy available to a purchaser who is faced with a seller's failure to effect required remediation of housing code violations is to complete the closing and then take appropriate legal action to require the seller to comply with that term of the contract.

*Chapman's* application of the law of Maryland [7] clearly indicates that a purchaser like Thomas who would turn to the courts for specific performance must first demonstrate a strong interest in completing the transaction and, where necessary, accept at closing less than the entirety of what he had bargained for in entering the contract. A court sitting in equity might deem it eminently fair and reasonable to require that much from a purchaser like the Fergusons or Ms. Clark who is able to complete closing and then, if the purchaser believes that she did not receive all that the contract provided for, pursue the matter in an appropriate legal action.

Ms. Clark argues that the trial court was not correct in stating that by indefinitely postponing the settlement date she was modifying the contract in a way comparable to the purchaser's modification of contract in *Ferguson*. It is accurate to state, as Ms. Clark does, that the purchaser in *Ferguson* imposed conditions other than those specified in the contract, but that does not conclude the matter. By indefinitely postponing closing and at the same time breaking off contact with sellers, and not completing financing arrange-

---

**7.** *See* n. 5, *supra.*

ments, Ms. Clark brought about, at the least, a substantial delay in closing. Of some relevance here is the opinion of the Maryland Court of Appeals in *Doering v. Fields*, 187 Md. 484, 50 A.2d 553, 555 (1947), which, quoting POMEROY'S EQUITY JURISPRUDENCE, 5th ed., vol. 2, ¶ 400, stated "although time is not ordinarily essential, yet it is, as a general rule, material." Moreover, Ms. Clark's conduct had the obvious effect of rendering her unready to proceed. While it is difficult to articulate the degree of willingness equity should require of a party to close on a contract where the other contracting party has stated that it does not intend to perform fully one of the "repairs/replacements" called for by the contract, this is a matter that can be assessed best by the judge considering equitable relief based on all the circumstances and the entirety of the conduct of the parties.

Ms. Clark's ancillary argument that she was excused from any further action regarding settlement because it would have been "futile" in light of sellers' position regarding waterproofing is unpersuasive, given our holding in *Ferguson*. Ms. Clark could have completed closing and then pursued further relief in court if that still appeared necessary. She was not faced with a seller who had repudiated as was the purchaser in *Independence Management*.

Ultimately, we must determine whether the trial court's finding that Ms. Clark was not ready, willing and able to perform the contract[8] was clearly erroneous. The trial court here made findings concerning the circumstances that surrounded the failure to effect closing. They included Ms. Clark's abrupt departure from the walk-through inspection with the words "see you in court" after the seller, Mr. Route, explained that he had expert advice that no further efforts were needed to keep water from the basement, the immediately subsequent failure of Ms. Clark to complete arrangements for financing, her unilateral cancellation of the closing, her failure to discuss the condition of the basement with respect to need for waterproofing, and her failure to ascertain from sellers whether they would furnish a warranty to satisfy the terms of the contract. It is true that sellers did not take the initiative to have further discussions, and that their position in the conversation preceding Ms. Clark's walkout was short of what the contract required. The trial court found that Ms. Clark "would likely have been approved for a loan if she had directed the loan officer to proceed." But even if that finding signifies that Ms. Clark could readily have become "able," the court did not clearly err in finding her not "ready, willing and able." Her conduct had obviously detracted from her readiness and shown her unwilling. Ultimately, therefore, we cannot say that the trial court abused its discretion in concluding that it should not grant Ms. Clark specific performance.[9]

Accordingly, the judgment on appeal is

*Affirmed.*

---

8. As we stated, the trial court uses the language "to proceed with the settlement" rather than "to perform the contract." Given the context and the nature of the trial judge's colloquies with counsel, we are satisfied that the court viewed the language as interchangeable.

9. We reject Ms. Clark's argument that she was prevented from rescinding the contract under the *Ferguson* approach. She neither raised the issue at trial nor requested it as an alternative remedy in her complaint.