**3511 13TH STREET, LLC, Appellant,**

v.

**Sonnythia LEWIS, et al., Appellees.**

No. 08–CV–1337.

District of Columbia Court of Appeals.

Argued Dec. 2, 2009.

Decided April 22, 2010.

Thomas F. Murphy, with whom Robert E. Greenberg, Washington, DC, was on the brief, for appellant.

Steven D. Campen for appellees.

Before FISHER and THOMPSON, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

This case arises out of a contract to purchase an apartment building in the District of Columbia. Appellant 3511 13th Street, LLC, and its sole owner and managing member, Steven Madeoy, sued for specific performance of its contract with appellee Sonnythia Lewis. Mr. Madeoy seeks reversal of the trial court's order entering judgment denying him specific performance of the contract pursuant to which Ms. Lewis had agreed to sell him an apartment building located at 3511 13th Street, NW, Washington, D.C. We affirm.

**I.**

Madeoy, as the managing member of 3511 13th Street, LLC, entered into a contract with Lewis on January 4, 2003, to purchase the property for the price of one million, three hundred thousand dollars

($1,300,000). The contract required that Madeoy provide an earnest money deposit of twenty-five thousand dollars ($25,000) and that settlement would take place on January 16, 2003. At trial, Madeoy testified that he had supplied a check in the amount of $25,000 to one Mark Tillmon for that purpose. However, he could not recall any details concerning the writing of the check or his furnishing it to Mr. Tillmon. Tillmon was a self-described consultant finder (or "bird dog") for Madeoy, and had been locating properties for him for several years. In his sworn deposition, Tillmon testified that he never deposited the check, lost it only a few days after receiving it, and never informed Madeoy of its loss. Tillmon did not sign the contract in the appropriate space to indicate that he had received the check. The trial court found that Madeoy did not make the deposit.

The contract provided that if the title was not "good of record and in fact" the deposit was "to be returned and sale declared off at the option of the purchaser" unless the title defects could "readily be remedied by legal action" which "must be taken promptly by and at the seller's expense." Prior to the date scheduled for settlement, Madeoy was told by the settlement officer, Benjamin Soto, that there was a cloud on the title, that is, a previous contract between Lewis and one Arthur Coleman. Accordingly, Madeoy did not go forward with settlement. The trial court recited that Madeoy "allegedly" offered Coleman $50,000 to gain formal release of the contract, and that the offer was rejected, but made no finding on that matter. Madeoy never demanded by correspondence or otherwise that Lewis take legal or other action to clear the title.

In early June 2003, Madeoy was informed of a contract between Lewis and Ms. Nuyen for the sale of the property for

one million five hundred forty-five thousand dollars ($1,545,000). Nuyen asked Madeoy to provide proof that he had tendered the earnest money deposit required by the Lewis/Madeoy contract, but he did not do so. Madeoy attempted to forestall the settlement on the Lewis/Nuyen contract by speaking with the settlement attorney for that contract and asserting to him that there were problems with the property, including that the utility and tax bills had not been paid and the tenants' rights had not been satisfied. All of the problems raised by Madeoy were found by the court to be groundless. Lewis filed for bankruptcy in an attempt to prevent foreclosure on the property. In the hope of purchasing the property at the foreclosure sale scheduled to take place on July 1, 2003, Madeoy not only attempted to derail the Lewis/Nuyen contract, but also testified for the mortgage holders at a bankruptcy "lift stay" hearing on May 8, 2003. Lewis and Nuyen proceeded to settlement on June 30. Madeoy filed this suit on the same day.

## II.

This case comes before this court for the second time. *See 3511 13th Street Tenants' Ass'n. v. 3511 13th Street, N.W. Residences, LLC,* 922 A.2d 439 (D.C.2007). The litigation began with three related actions in Superior Court: (1) a suit for specific performance by Madeoy; (2) a counter-suit by Lewis and Nuyen against Madeoy alleging that Madeoy had tortiously interfered with their contract for sale; and (3) an action to rescind the Lewis/Nuyen contract filed by a tenants' association representing tenants of the building, alleging that they had not been given notice of the sale and an opportunity to purchase their units as required by the Tenant Opportunity to Purchase Act (TOPA), D.C.Code §§ 42–3404.02, –3404.13

(2001). The trial court granted summary judgment against Madeoy in his suit for specific performance, concluding that his alleged contract was not supported by valid consideration. The other two actions were tried to a jury. The judge dismissed the counter-suit against Madeoy on his motion for judgment as a matter of law, and the jury rejected the tenants' claim that they had not been given the required statutory notice. *See 3511 13th Street Tenants' Ass'n,* 922 A.2d at 440–41.

Madeoy and the tenants' association appealed the trial court's judgment in their respective actions. This court affirmed the jury verdict against the tenants' association, but reversed the trial judge's ruling that as a matter of law the contract between Madeoy and Lewis lacked valid consideration. We held that there existed genuine issues of material fact about whether Madeoy intended to be bound by his promise to buy the property and whether his alleged failure to deliver the earnest money deposit constituted a breach of the contract excusing Lewis from further performance. *See id.* at 443–44.

On remand, the trial court denied Madeoy's request for specific performance. The court decided not to exercise its discretion to order specific performance because (1) the plaintiff did not prove he was ready and willing to perform the contract with Lewis; (2) the equities did not weigh in favor of the plaintiff; and (3) the plaintiff's failure to provide the required earnest money deposit to Lewis was a material breach of the contract. The court also concluded that appellant's intentional delay in seeking enforcement of the contract with Lewis not only evidenced that appellant was not willing to go forward with the contract, but also represented laches.

In denying Madeoy's claim for specific performance, the court focused on his failure either to tender the earnest money deposit or to require Lewis to take action to clear the title, and on his attempts to obtain the property through a foreclosure sale rather than a purchase from Lewis, which included his effort to derail the contract between Lewis and Nuyen so that the property would be available for purchase at foreclosure.

## III.

Madeoy filed a timely appeal from the judgment denying him specific performance. He argues on appeal that the trial court erred (1) in finding that he was not ready and willing to perform his contractual obligations; (2) by considering the balance of the equities; (3) in finding that Mr. Madeoy's failure to pay the earnest money deposit was a material breach of the contract; and (4) in finding Madeoy's claim barred by laches. We hold that the trial court did not err in finding that Madeoy was not willing and ready to perform, or in considering the balance of the equities, and did not abuse its discretion in denying specific performance. We need not reach the remaining issues.

"Specific performance is an extraordinary equitable remedy, and the determination whether or not to order specific performance is confided to the 'sound and informed discretion' of the trial court." *Clark v. Route,* 951 A.2d 757, 759–60 (D.C. 2008) (quoting *Independence Management Co., Inc. v. Anderson & Summers, LLC,* 874 A.2d 862, 867–68 (D.C.2005)). We review for clear error a trial judge's finding that an appellant was not ready, willing, and able to perform the contract, and therefore not entitled to specific performance. *See Clark,* 951 A.2d at 760 (citing *Flack v. Laster,* 417 A.2d 393, 400 (D.C. 1980)).

In its written order denying Madeoy specific performance, the trial court focused on this court's decision in *Clark, supra,* in which we discussed and applied a principle of Maryland law that a plaintiff seeking specific performance must show that he is "ready, desirous, prompt, and eager." To illustrate the strong showing required of one seeking such relief, we noted in *Clark* that under Maryland law, a chancellor could require that a plaintiff show himself to have been willing to accept defective title in order to be awarded specific performance. 951 A.2d at 763–64 (citing *Chapman v. Thomas,* 211 Md. 102, 126 A.2d 579, 582 (1956)). The trial court found that Madeoy's failure to tender the earnest money deposit and his attempts to forestall the Lewis/Nuyen contract and otherwise obtain the property through a foreclosure sale demonstrated that he did not intend to close on his contract with Lewis and consequently had not been "desirous, prompt and eager" under the principle of Maryland law that we applied in *Clark.* It found that "[i]n fact, Madeoy did not want the contract with Lewis to close.... [I]f Madeoy's true intent was to hold Lewis to the contract, he would have made earnest money deposit and demanded Lewis file suit against Coleman to clear title."

We have held previously that a purchaser who seeks a remedy of specific performance "must first demonstrate a strong interest in completing the transaction and, where necessary, accept at closing less than the entirety of what he had bargained for in entering the contract." *Clark,* 951 A.2d at 764 (citing *Chapman,* 126 A.2d at 582).[1] In *Clark,* a contract for the sale of a residence required the seller to waterproof the basement and have it approved by a licensed professional. During a walk-through inspection, the seller explained to the purchaser that two waterproofing contractors had looked at the basement and informed him that it did not need waterproofing. In response to being told that the property had not been waterproofed as required by the contract, the purchaser simply stated "see you in court," terminated the conversation, walked off the property, and never spoke with the seller again about the contract. On appeal, we affirmed the trial court's denial of specific performance, holding that the purchaser's failure to make any efforts to settle the contract demonstrated that she was not ready, willing, and able to perform. We stated also that "[w]hile it is difficult to articulate the degree of willingness equity should require of a party to close on a contract where the other contracting party has stated that it does not intend to perform fully" one of its provisions, "this is a matter that can be assessed best by the judge considering equitable relief based on all the circumstances and the entirety of the conduct of the parties." *Id.* at 765.

---

1. In *Chapman,* the Court of Appeals of Maryland affirmed the trial court's judgment granting specific performance to a purchaser, Thomas, who delayed settlement somewhat due to apparent encroachment on the property. The court held that a

purchaser who seeks specific performance has two primary obligations. First, he must seek relief with due diligence and show that under all the circumstances he was "ready, desirous, prompt, and eager" .... Second, if he delays settlement while attempting to have the seller remedy a

claimed defect in the title of the property, he must, when it becomes clear the seller will not meet his demands, either accept the title as it is and promptly tender settlement, or cancel the contract.

126 A.2d at 582 (internal citations omitted). The court found that as soon as it became obvious that the seller would take no action to clear the encroachment, Thomas offered to take the property as it was, and that he made repeated efforts to proceed to settlement, thereby putting himself in a position to seek specific performance. *Id.*

We cannot say that the trial court abused its discretion in denying specific performance where, as in *Clark*, its finding that Madeoy was not ready and willing to perform the contract was based upon its consideration of all of the circumstances and the conduct of the parties. *Id.* First, the trial court considered the circumstances surrounding the failure to settle the contract. It found that Madeoy did not furnish the earnest money deposit, which would have indicated to Lewis that he wished to enforce the contract, and that he did not demand that Lewis clear the title defect either by legal action or otherwise. The trial court found that his only effort to clear title was to "allegedly" offer Coleman fifty thousand dollars ($50,000) for a formal release of Coleman's contract with Lewis, and that he took no further steps to go about settlement on the property.[2] Additionally, the court considered Madeoy's attempts to purchase the property at foreclosure rather than pursuant to the contract, efforts which included testifying as a witness for the mortgage holders at a bankruptcy "lift stay" hearing, and alleging problems with the property which the court found did not exist, in an effort to prevent the settlement between Lewis and Nuyen and make the property available for purchase at foreclosure. The court found that these attempts demonstrated that Madeoy was not eager to follow through on the contract, but rather hoped to purchase the property by other means.

We hold that Madeoy's failure to tender the earnest money deposit, his relative inaction in regard to settling the contract for the period from January to June of 2003, and his attempt to purchase the property at foreclosure provided sufficient grounds for denying specific performance. Even if we take it that the court found that Madeoy actually (not merely allegedly) offered Coleman fifty thousand dollars ($50,000) for a formal release of his contract with Lewis, we cannot say that the court clearly erred in finding that the weight of the evidence supported the finding that he was not ready and willing to perform. As we said in *Ferguson v. Caspar*, 359 A.2d 17 (D.C.1976), purchasers who are faced with a seller's failure to meet the contract terms:

> could [refuse] to consummate settlement and [bring] an action at law against the seller for such damages as they may have sustained. Alternatively, the purchasers could [elect] to complete the settlement, and under the survival provisions of the contract, [sue] to recover from the seller such damages as they may have sustained by reason of her failure to correct the outstanding violations.

*Id.* at 23. The ability of a purchaser to employ an additional remedy at law may lead a court sitting in equity to decide that, under the circumstances of a particular case, in order to obtain specific performance a purchaser must have shown himself willing to accept "less than the entirety of what he had bargained for in entering the contract." *See Clark*, 951 A.2d at 764 (citing *Chapman*, 126 A.2d at 579). The Maryland Court of Appeals held in *Chapman* that this may include even accepting defective title. *Chapman*, 126 A.2d at 582.

---

**2.** It is not clear from the trial court's findings whether the court actually found that Mr. Madeoy offered Mr. Coleman fifty thousand dollars ($50,000) for a formal release of a contract between Coleman and Lewis. Indeed, it was not established that such a contract existed or, if so, whether it remained in force at the time of the Lewis/Madeoy contract. It is clear that Lewis and Nuyen settled on the sale of the property on June 30, 2003, notwithstanding any alleged cloud on title arising out of a previous contract with Coleman.

Of course, whether the circumstances warrant denial of specific performance in a particular case where there is a possible defect in title is a matter for the court to weigh.

We note also that we do not find fault with the trial court's consideration of the "balance of the equities." Specific performance is an equitable remedy, and the trial court has broad discretion with respect to whether to grant it. *See Tauber v. Quan,* 938 A.2d 724, 732 (D.C.2007). The trial judge, acting as a chancellor in equity, necessarily is authorized to take equitable considerations into account. *See Clark,* 951 A.2d at 762–63; *Tauber,* 938 A.2d at 733. Accordingly, the judgment on appeal is affirmed.

*So ordered.*